# JUNE 29, 1934

## CECIL ACOSTA v. THE STATE.

No. 16629.   Delivered May 9, 1934.
Rehearing Denied June 29, 1934.

The opinion states the case.

*James F. DeLoney,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

The killing was at night, at a party. Appellant, John Martinas, Chireno and others were together. Deceased, accompanied by a cousin, walked up. According to the State, John Martinas, who will be called John hereinafter, cursed deceased, using an ugly word. Deceased said he did not like to be called that. Appellant then called to deceased to come aside and walked a short distance with him, John going with them. Appellant then struck deceased on the head knocking him down, or partially so. Before deceased could get up John stabbed him with a knife, cutting the jugular vein. Deceased died in a a very short time. He said to witness Davis, who went to him as soon as he was cut, "That old buck, Cecil Acosta, hit me with a pistol and knocked me just about down, and that Slavonian stabbed me just before I got straight." John was the Slavon-

appellant and John were drinking. After the cutting they ran away together.

Appellant testified, denying that he hit deceased, and claiming that after John cursed deceased they got into an altercation or bruise about two inches in length. Davis testified that both ian. Upon the head of deceased after death was found a cut in which deceased threatened to beat hell out of John, and blows were exchanged and John cut deceased. He said before John cut deceased the latter had already hit John twice and had run his hand in his pocket. Other witnesses corroborated appellant's story, and a number of them testified that John was the one who did the cutting which resulted in the death of deceased.

We find in the record no complaint of any procedure except of the refusal of the motion for new trial sought chiefly because of misconduct of the jury. It was set up in the motion that a question was raised in the jury room as to why John, who did the cutting which killed deceased, was not tried first. It was further alleged that the foreman, Mr. Gaston, brought before the jury evidence as appeared in the affidavits attached to the motion. Affidavits of jurors Perritt and Lacey, also of the district clerk and appellant's attorney were so attached. The statements attributed to Mr. Gaston in the jury room were as follows: "What they are trying to do in this case is to lay all the blame for the murder of Gray Molandes on John Martinas who is only fifteen years old, and then when they clear this defendant, Cecil Acosta, they will try John Martinas as a juvenile and thereby beat both cases." Issue was joined by the State, and upon presentation of the motion the court heard all twelve jurors, and also the district clerk and appellant's attorney.

Juror Perritt, in his affidavit attached to the motion for new trial, swore that Gaston, foreman of the jury, in the jury room made the statement above attributed to him, and was the first witness on the hearing of the motion for new trial. He testified that he did not know whether Mr. Gaston said John was fifteen years old or not; that some one did. As to what was said by "some one" as to John's age, he did not know that he said he was fifteen, but thought he was. We quote from his testimony: "I don't know that he knew he was fifteen, but that is the idea,—they would get the blame laid on the younger boy and he would be tried as a juvenile and get a suspended sentence and get off, and both would beat it." We observe that there was no dispute in testimony but that

John was younger than appellant, who was an uncle of John's. Nor is it made to appear that John Martinas was not in and around the court room during the trial where his general appearance and age could be observed by the jurors themselves. On cross-examination Mr. Perritt testified: "I do not remember who this was that said something about the boy's age; he was just talking to the bunch in the room there." This juror voted for acquittal both before and after he claims this discussion was had. He testified "After what I heard said I still voted the boy's innocence; I voted until the very last that he was innocent."

Juror Lacey, who also made affidavit attached to the motion for new trial, testified. He said there was some discussion in the jury room as to why John who was shown to have been the cause of the death, was not tried first. Some one was wondering about this; something about the boy not being of age, to be tried in the district court, and he would be tried in the juvenile court. This witness did not know who started such talk, or what anyone said. He said it seemed something was said like that if they acquitted Cecil now,— later they would try John as a juvenile and keep him from the penitentiary, but he would not be certain; he did not remember. He said if there was any discussion of this kind it was at night, and the jury stood about half and half. It appears from the record the jury deliberated several hours the next morning. This witness did not remember anything that was said next morning.

Juror Dennard, also introduced by appellant, testified as follows: "As to whether I remember anything being said that John would be tried later as a juvenile, I will say, Well, I heard something said about him being under fifteen, or something like that; I do not remember exactly; I think I said myself, 'Well, he will likely be tried in the juvenile court;' I might have said that; I think I did say that myself; while that had nothing to do with rendering our verdict; that boy wasn't being tried—this boy. That merely came up and wasn't discussed or anything—just spoken of."

The State introduced nine jurors. Gaston, the foreman, swore that he did not say in the jury room what is above set out as attributed to him, nor did he say that John was only fifteen years old, nor was anything of that kind said in his hearing. He said some one wanted to know if they were trying both men, and he informed them that the other one would be tried later. Juror Parrish said he thought that it

was mentioned in the jury room that John was younger than appellant; he thought some one said he was fifteen or sixteen; he was not sure. There was no discussion of this; it was just mentioned. Juror Marshall said his best recollection was that some one said in the jury room that he thought the boy was about fifteen years old, but he was not sure. He heard nothing about why they did not try John first, or that they were trying to lay the blame on John and then get him off as a juvenile. Juror Walker heard nothing said in the jury room about the age of John, nor as to why they did not try him first, or as to any effort to put the blame on John. Juror Layton heard nothing in the jury room as to the age of John, or that they were trying to lay the blame on John to get appellant out. He felt sure no such statements were made as the jury were together most of the time, and if such statements had been made he thought he would have heard same. Juror Bates did not hear any statement as to John's age, or that they were trying to put the blame on John and try him as a juvenile. Juror Adams heard nothing as to John's age, or to the effect that they were trying to put the blame on him and try him as a juvenile. This juror voted first for acquittal but finally for conviction. Juror Wyatt heard nothing as to the age of John. He said it seemed like some one wanted to know why they did not try the boy first, who did the actual cutting. Juror Self said he did not remember hearing anyone say anything about the age of John, or trying him as a juvenile, and putting the blame on him.

We have set out the substance of the testimony of the members of the jury, omitting that of the district clerk and counsel for appellant who appear to have gone near the jury room during the deliberations of the jury, and made affidavit and also testified that they heard what was being said on the inside and stated what same was. In view of the fact that nothing in this record affirmatively shows that the knowledge claimed to have been so obtained by said parties was not the result of an intentional effort on their part to hear what was being said by the jury, we must decline to consider such statements or affidavits. It is clearly not permissible that a jury shall be shadowed. Sinclair v. United States, 279 U. S., 749. It has always been the effort, bounded only by the facts that jurors must eat and sleep,—to sequester the jury in felony cases after impanelment, from the rest of the community. State v. Jeffries, 210 Mo., 302, 109 S. W., 614. As far as practicable intercourse between such jurors and others is for-

bidden,—to effect which the jury are committed to the care of a sworn officer, and attempts to invade their seclusion are illegal and in palpable violation of judicial authority. State v. Doty, 32 N. J. L., 403, 90 Am. Dec., 671. It is also properly held that jurors should be permitted to deliberate upon their verdict in absolute privacy, and should not be embarrassed in their freedom of discussion and deliberation by the presence of any other person or persons, even though such person be the judge or some officer of the court. People v. Knapp, 42 Mich., 267, 36 Am. Rep., 438. We might add that should the practice be tolerated or permitted of invading the privacy of the deliberations of such jury room by listening through transoms, other openings or walls, and then undertaking by relations of what is claimed to have been heard,—to impeach the verdict of a jury,—then indeed privacy of such deliberations would be not only seriously hampered and interfered with, but might be regarded as at an end, for no juror would then openly express his views or freely discuss with his fellows in the jury room until he or they had first investigated the surroundings to see if listeners be near or possible. The practical effect of such holding would be to permit the jury room or place of deliberation of the jury to be surrounded by interested parties in person or through their representatives or agents, each in an effort to lay hold upon something that might be said in the jury room upon which an application for new trial on the ground of misconduct might be predicated, and thus instead of being in the condition to which we are relegated by our present practice, which is bad enough, wherein and whereby the jurors themselves are haled before the court in support of motions for new trial and compelled to try to remember and state what was said and done in the jury room,—we would have an army of interested outsiders also called upon to state what they heard or thought they heard said by jurors while discussing the facts of a case in their deliberation. We are furnished no precedent in this State and none exists so far as this court knows, supporting the admissibility of such statements, and express the hope that such occurrence will not again be brought to the attention of this court. We are not able to agree with appellant that misconduct of the jury is shown. No juror testified supporting the statements set out in the motion for new trial and there attributed to Mr. Gaston, who denied making same in form or in substance. Three jurors testified at the instance of appellant. Two of these, Lacey and Dennard, were exceed-

ingly indefinite and did not remember anything upon which could be predicated the fact that new evidence was put before the jury by anybody. Perritt affirmed that he heard some one say that John was fifteen years old, but he did not know who said it, but that the idea was that they were trying to push it off on the younger boy who was just fifteen, and get appellant out. Since all twelve jurors were before the trial court and gave their testimony as to what was said and done in the jury room, and no one of them affirmed,—but all in effect denied,—that he made any such statement, we are impressed with the fact that the trial judge was well within his discretion in declining to grant the motion for new trial. We can not overturn the solemn verdicts of sworn jurors upon vague and indefinite hypotheses such as "I think some one said so and so, or I have an impression that this or that was said or done in the jury room."

We think it not error to refuse a new trial because of the alleged newly discovered evidence. The whereabouts or supposed testimony of one of the alleged newly discovered witnesses was unknown and could only be hypothetically stated. The other such witness, Joe Acosta, appears to be a nephew of appellant, lived near him both at the time of the alleged murder and at time of the trial, and according to the testimony of unbiased witnesses was present at court during appellant's trial, and was seen in conversation during said trial with Manuel Acosta, who was a witness upon the trial of this case, and also a nephew of appellant. It is not suggested that Joe Acosta had purposely misled appellant or his attorney, or had concealed from them what he knew. In our opinion reasonable diligence would have discovered such testimony. In the main the alleged newly discovered testimony of said Joe Acosta was but cumulative of testimony given by other witnesses.

We have been impressed with the zeal and energy with which appellant was defended, but being unable to agree with appellant that error appears, the judgment will be affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING

HAWKINS, JUDGE.—Appellant renews his contention that he should have been awarded a new trial because of the claimed newly discovered evidence of Joe Acosta. Said witness' affidavit is attached to the motion for new trial. Nowhere in said affidavit does the witness say that he did not

before the trial acquaint appellant with the facts which witness in his affidavit claimed to know. Appellant was not confined in jail; he was out on bond up to the time of his trial, was related to witness and lived not far from him. Upon the hearing of the motion for new trial appellant's attorney testified that he had no knowledge that Joe Acosta was present when the difficulty occurred, or what his evidence regarding same would be, until after the conviction of appellant, and when the attorney was preparing for trial in a companion case. There are averments in the motion for new trial which if properly supported by competent evidence, would show that the proposed testimony of Joe Acosta was not known to appellant until after the trial. However, appellant did not testify on the hearing of the motion regarding such matter, neither did Joe Acosta. Although the motion for new trial was sworn to by appellant such verification did not prove the truth of the matters set up in the motion. It is regarded generally as only a pleading. Noble v. State, 98 Texas Crim. Rep., 463, 266 S. W., 412; Johnson v. State, 111 Texas Crim. Rep., 395, 13 S. W. (2d) 114; Rollins v. State, 53 S. W. (2d) 786; Mershon v. State, 55 S. W. (2d) 836; Waster v. State, 56 S. W. (2d) 455.

For the additional reasons stated here we can not hold that the learned trial court committed error in refusing a new trial for newly discovered evidence.

The motion for rehearing is overruled.

*Overruled.*