In the Matter of EDWIN R. LEWINSON, Appellant, *v.* ROBERT J. CREWS, as County Clerk, Respondent.

Second Department, July 10, 1967.

*Emanuel Redfield* for appellant.

*Seymour Besunder* for respondent.

CHRIST, J. This appeal focuses on an issue new to the appellate courts of New York. Is total blindness a disqualification for jury duty pursuant to section 596 of the Judiciary Law? The County Clerk has said yes and the learned Justice at Special Term has agreed; thus, the petition was dismissed.

While we admire the civic spirit which moves the petitioner to persist in his desire to serve as a juror, our determination must rest on other considerations. Section 596 of the Judiciary Law provides in pertinent part as follows:

" In order to be qualified to serve as a juror in the counties included within a city having a population of one million or more, a person must:  *  *  *

" 4. Be in the possession of his natural faculties and not infirm or decrepit.  *  *  *

" 6. Be intelligent; of sound mind and good character; well informed; able to read and write the English language understandingly."

It is for the County Clerk to apply these tests and it was he who first decided against the petitioner.

Edwin Lewinson, petitioner, has been totally blind since birth but he has done more with his 35 years of life than many sighted persons of his age. He holds several advance degrees, including a Ph.D., and he is an assistant professor in the history and political science department at Seton Hall University at South Orange, New Jersey. The petitioner commutes thence daily by public transportation from his home in Brooklyn, New York. In May, 1965, the County Clerk of Kings County summoned him for purposes of qualification as a juror and rejected him initially on the sole ground of his blindness. In the formal proceedings since that time, Mr. Lewinson's inability to read " the English language understandingly " has been added as a reason for disqualification.

Does a sightless person have his " natural faculties " within the purview of the statute? We think not. Subdivision 4, wherein these words appear, quite clearly deals with one's physical attributes and powers. The term is used conjunctively with " infirm and decrepit " — essentially physical characteristics. Eyesight is expected to be found in human beings as a part of nature's complement of sound health and physical equipment. When one is deprived of this power of sight, he falls short of the total capacity which is natural in a human being and thus, by statutory definition, we believe that a blind person cannot be said to be possessed of his " natural faculties ".

It is urged upon us that " natural faculties " means not physical attributes but rather powers of mind and memory. reason, judgment and the like. When we examine the structure of the entire statute and read particularly subdivision 6 of section 596, we find the words " intelligent ", " sound mind ", " good character ", " well informed ", " able to read and write the English language understandingly ". These are the intellectual qualifications. Were we now to hold that " natural faculties " in subdivision 4 is also limited to powers of mind and that it does

not encompass the physical attributes of human beings, subdivision 6 would be rendered redundant. Furthermore, the mind does not operate in a vacuum. It is fed by the senses and the data and the information by which discernment and reasoning are exercised. The judgment reached by the mind is predicated upon the impressions which the senses convey to it. The statute, we are sure, covers and was meant to cover qualifications respecting both the mind and the body.

The interpretation which we put upon the statute is supported by an examination of the practical duties and responsibilities which fall upon a juror.

He is frequently required to evaluate physical evidence. There are still photographs and moving pictures, and there are mechanical objects which demonstrate working parts. Sometimes enlarged fingerprints are the subject of comparison and examination; so, too, are diagrams and enlargements of handwriting exhibits when the genuineness of documents is being questioned. Occasionally, demonstrations are made with diagrams upon a blackboard. These are but a few of the many materials, objects and methods of presentation brought to the courtroom concerning which sight is indispensable to a full understanding.

Sight is also a factor in testing the credibility of a witness. The veracity of a witness is determined in the main by what he says. It may be discovered in the context of the questions and the answers and to some extent by the intonations of his voice. Another aid in this respect is the facial expression and body movement of a witness upon close and intense interrogation. Sight enforces the juror's judgment in this regard. Appellate courts recognize that a witness's physical presence provides assistance to the trier of the facts in evaluating his testimony, for although the appellate court has all the words of the trial before it in the printed record on appeal, it often bows to the determinations of fact made by the Judge or jury at the trial based on personal observations of the witnesses (*63 Building Corp.* v. *Schlacter,* 11 A D 2d 743; see, also, *Amend* v. *Hurley,* 293 N. Y. 587). There is sound reason for this rule of law for at the trial other aids beyond the cold record help to tell truth from falsehood.

A litigant who comes before the Bar of Justice, whether in a criminal case or in civil litigation, wishes to have the impact of his evidence fall with its full weight upon the jury, if there be a jury trial. If his evidence or exhibits are not understood or the force of his interrogation of witnesses is lost, he will not

have been afforded his full rights. It is not an adequate protection to say that he may challenge the blind juror on the *voir dire* for if we hold blindness not to be a disqualification under the statute, a challenge for cause will not be available thereafter on that account. A peremptory challenge would be still available but these are limited in number and they are an important right possessed by a litigant; he should not be made to resort to such challenges in order to preserve his right to fair trial.

In requiring "natural faculties" as a qualification for service on a jury, the Legislature may have considered not only the function of a juror, but also the effect his disability would have on the orderly and practical operation of the court's processes. While this factor alone would not support the construction we make, it is a pertinent consideration.

There is no constitutional issue in this case; it is one entirely of statutory interpretation. We find that the County Clerk properly applied the statute. The judgment appealed from should be affirmed.

HOPKINS, J. (dissenting). The qualifications of a juror are defined in the statute (Judiciary Law, § 596), and the court below held, and the respondent here urges, that as County Clerk he has an administrative discretion in enforcing the standard in individual cases. I do not so construe the statute. If the citizen meets the standard, the County Clerk may not reject him for jury duty (cf. *Matter of Ford* v. *O'Byrne*, 222 App. Div. 50). Here the facts are not in dispute, and the respondent cannot apply the statute to debar the petitioner from jury service, unless a judicial construction of the statute justifies the exclusion. In this view of the power of the respondent I take it the majority agrees: our division rests on the meaning of the statute vis-a-vis a blind citizen.

A citizen is guaranteed certain privileges and immunities (U. S. Const., art. IV, § 2; 14th Amdt.; N. Y. Const., art. I, § 1). Traditionally, the right and duty to serve as a juror has been accounted to be a privilege of citizenship (cf. Civil Rights Law, § 13). Correlatively, all persons, whether citizens or aliens, are entitled to a trial by jury composed of citizens representing a broad spectrum of the community. A statute, which, either by definition or by administrative enforcement, prevents jury service by a large segment of the population violates the constitutional guarantees (*Hernandez* v. *Texas*, 347 U. S. 475, 482; *Strauder* v. *West Virginia*, 100 U. S. 303, 308).

The blind is a large segment of our population.[1] A statute which by its definition of qualifications of jurors denies to the blind the right of jury service should do so in unmistakable terms; and the discrimination must be based on rational grounds. But our statute does not single out blindness as a ground of disqualification, as it does felons or the nonpropertied. In order to deprive the blind citizen of the right to be a juror, the majority finds an implicit disqualification in the words of the statute that a juror must "be in the possession of his natural faculties and not infirm or decrepit." Certainly, a blind person is not infirm or decrepit, and I think that in the context of the statute he is in the possession of his natural faculties. The statute must be considered in the light of the constitutional purpose to diffuse the right and duty of jury service throughout the whole citizenry. The ability to serve effectively as a juror must be the point of the statute; and the possession of intellectual power to discharge the duty is the meaning of the term "natural faculties" which the statute employs.

The words of the statute ("in the possession of [his] natural faculties, and not infirm or decrepit") are found in the Revised Statutes of 1829. (Rev. Stat., part III, ch. VII, tit. IV, § 13, subd. 4). That the words applied to intellectual capacity is evident from a following provision in the same chapter and title (§ 33) : "The court shall discharge any person from serving on a jury, in the following cases :      *      *      *

"2. When it shall appear that such person is under twenty-one years of age, or over sixty years of age; or that he is not in possession of any of his rational faculties".

---

1. It has been estimated that the number of blind persons (i.e. blindness as defined by the Social Security Act of 1935) in the United States in 1966 was 421,250, and that in 1980 their number will approximate 519,000 (Estimated Statistics on Blindness and Vision Problems, National Society for the Prevention of Blindness, Inc. p. 25 [1966]; Estimated Total Cases and New Cases of Legal Blindness by State, 1966, National Society for the Prevention of Blindness, Inc. [1967]). Of those legally blind in 1966, it appears that the greatest number reside in this State. The number of persons barred from jury service by my colleagues' holding, however, extends beyond those called legally blind and undoubtedly includes many persons suffering severe vision impairments. Thus, using as a standard the ability to read ordinary newsprint with the aid of glasses, the United States National Health Survey has estimated that in the period 1959–1961 approximately 988,000 persons suffered severe vision impairments. (Selected Impairments by Etiology and Activity Limitation, United States, July 1959-June 1961, U. S. Department of Health, Education and Welfare, Public Health Service.) The world's blind population is thought to be about 9,500,000 (1960 Britannica Book of the Year 108).

Thus, the statute equated decrepitude and infirmity with a given age, and natural faculties with rational faculties.[2] It is notable that the present authority of the court to discharge a juror is not as specific and speaks in general terms (Judiciary Law, § 605; see comment, Sixth Annual Report of N. Y. Judicial Council, 1940, p. 212). The retention of the language of the Revised Statutes signifies an intention to continue the original meaning (*People ex rel. Van Riper* v. *New York Catholic Protectory,* 106 N. Y. 604, 613; *Buduson* v. *Curtis,* 285 App. Div. 517, affd. 309 N. Y. 879). The right of jury service, then, unless limited by a clear direction, reposes in all citizens; the litigants may, of course, exercise their power of selection at the *voir dire.* A litigant might well favor the acceptance of a blind juror to serve in his case, despite the physical handicap.

The ability of the blind to serve in the seat of judgment is reflected by the career of many nonsighted persons.[3] Blindness does not disable one to be a lawyer or a Judge; it is contradictory to use the defect as a reason of rejection as a juror, especially since the juror does not act alone but in conjunction with 11 other persons to reach a joint determination.

True, the blind juror cannot see the witness or real evidence. But an appraisal of testimony does not depend on the mere visual presentation; the voice of the witness and the inherent probability of the truth of the testimony are as cogent signs of the credibility of the evidence. In the use of these tests a blind person is no more handicapped than the sighted.

Indeed, the selection of jurors depends largely on the judgment of the suitors at the time of the trial. Any predilection or bias on the part of a prospective juror which would militate against a fair verdict is thus left to exposure at the *voir dire*; and I see no difference between the exercise of judgment in the selection of jurors between physical blindness and a blind spot in the emotional or intellectual personality. In each case the acceptance of the juror hangs on the assessment of his qualities to serve in the particular litigation to be tried.

As the majority fairly admits, save for the existence of blindness, the petitioner has an exceptional educational background. He undoubtedly could act in the capacity of a juror as

---

2. These qualifications were said in 1940 to have existed for more than a hundred years (Sixth Annual Report of the New York Judicial Council, 1940, p. 206).

3. United States Senator (Thomas P. Gore); members of Parliament (Henry Fawcett; Sir Ian Fraser); Judges (Charles R. Simpson; Clair L. Finch). Blindness is not a disqualification for holding public office (*State ex rel. Shea* v. *Cocking,* 66 Mont. 169).

well as the average sighted juror. The community has increasingly recognized the potential reservoir of talent and intelligence which the blind possess in common with other members of the group through the expansion of schools and auxiliary services: jury service, it seems to me, is not beyond their capabilities.

I vote to reverse the judgment and to grant the petition.

BELDOCK, P. J., UGHETTA and BRENNAN, JJ., concur with CHRIST, J.; HOPKINS, J., dissents in separate opinion.

Judgment of the Supreme Court, Kings County, dated April 26, 1966, affirmed, without costs.