Teresa ECKSTEIN, Plaintiff,

v.

William J. KIRBY, Judge, First Division, Circuit Court of Pulaski County, and the State of Arkansas, Defendants.

No. LR–C–78–91.

United States District Court, E. D. Arkansas, W. D.

June 9, 1978.

Robert Fussell, Little Rock, Ark., for plaintiff.

John Wesley Hall, Jr., Deputy Pros. Atty., Little Rock, Ark., for Kirby.

Jackson Jones, Asst. Atty. Gen., Little Rock, Ark., for the State.

## MEMORANDUM OPINION

ROY, District Judge.

This declaratory judgment action questions the constitutionality of Ark.Stat.Ann. § 39–102(c) and (f) (Supp.1977). The challenged statutory provisions provide in pertinent part as follows: "The following are disqualified to act as grand or petit jurors: (c) Persons who are unable to speak or understand the English language. (f) Persons whose senses of hearing or seeing are substantially impaired."

The jurisdiction of the district court is premised upon the provisions of 28 U.S.C. §§ 1343(3) and (4), 2201–02; and 42 U.S.C. § 1983. The facts and circumstances preceding the institution of this suit have been, for the most part, stipulated by the parties.

The plaintiff, Ms. Teresa Eckstein, is totally deaf and mute having been so incapacitated since birth. Ms. Eckstein is a citizen of the United States of America and the State of Arkansas. She is a graduate of the Arkansas School For The Deaf and resides, is registered to vote, and pays taxes in Pulaski County, Arkansas. She is gainfully employed in the tele-processing department of a local business concern. She can read, write and understand the English language. She is articulate in performing manual sign language and, through the assistance of a qualified interpreter, can receive and transmit the English language to hearing persons at an above normal level.

The defendants in this case are the State of Arkansas and William J. Kirby who is a trial judge in Arkansas' Sixth Judicial District. Judge Kirby, at all times relevant to the present action, presided over the First Division of the Pulaski County Circuit Court, the jurisdiction of which includes the trial of cases involving felony offenses under Arkansas law.

On March 20, 1978 the plaintiff, Ms. Teresa Eckstein, was selected as a prospective petit juror in the First Division of the Pulaski County Circuit Court in the trial of a felony case. The plaintiff appeared for jury duty as instructed by the court and was accompanied by Mr. Clarence F. Landon, a qualified court interpreter and a certified member of the National Registry of Interpreters for the Deaf. According to the stipulations between the parties, Mr. Landon has served as an interpreter in state court trials for deaf persons or persons with substantial hearing impairment who have either been called as witnesses or who have appeared as parties to various actions. Mr. Landon is a hearing person and communicates with deaf persons by

transmitting and receiving manual English sign language. During the course of the voir dire examination of the prospective jurors, Judge Kirby made, in substance, the following inquiry in an effort to determine the plaintiff's qualifications to serve as a petit juror:

Q. (By Judge Kirby through an interpreter) Do you know the defendant?

A. (Through an interpreter) No.

Q. Do you know any of the witnesses who will be called to testify in the case?

A. No.

Q. Do you know anything about this case?

A. No.

Q. Could you render a fair verdict in the case?

A. Yes.

Q. (By the Deputy Prosecuting Attorney, through an interpreter) Will you need an interpreter during the course of the deliberations of the jury?

A. Yes.

The plaintiff was thereafter excused for cause by defendant Kirby.

On March 27, 1978 Ms. Eckstein filed an action for declaratory judgment in federal court. On March 31, 1978 the plaintiff voluntarily reappeared for jury service in the First Division of the Pulaski County Circuit Court. Defendant Kirby permanently discharged the plaintiff from the jury panel at that time, having found the plaintiff disqualified for service by virtue of Ark.Stat. Ann. § 39–102(f) (Supp.1977).

The plaintiff contends that section 39–102(c) & (f), *supra,* on its face and as applied to her, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. The plaintiff argues that the state law arbitrarily and capriciously excludes persons with substantial hearing impairment without appropriate guidelines or standards for determining whether such persons possess other attributes necessary for serving effectively as a juror. The plaintiff further argues that the statutory provisions discriminate against non-hearing persons in that the legislative classification created by the statute denies a right or privilege of citizenship, *i. e.,* the right to be considered for service as a juror, to deaf persons or persons with substantial hearing impairment, while granting the same right or privilege to hearing persons. The plaintiff, in effect, argues that jury service is a right or privilege incidental to citizenship and that the state law in question, by disqualifying her merely on the basis of a physical incapacity such as deafness, invidiously excludes her from exercising or participating in the enjoyment of this right.

The individual defendant and the State of Arkansas contend that there is no "right" to serve on a jury. Alternatively, the defendants argue that the legislative exclusion of persons with substantial hearing impairment from jury service is a reasonable and legitimate exercise of the State's right to determine juror qualifications. The defendants contend that there is ample and sufficient justification for disqualifying deaf persons or persons with substantial hearing impairment from jury service. Those justifications include the following contentions: (1) Deaf persons have limited vocabularies, thus even with the assistance of interpreters verbatim translations of questions and answers cannot be achieved; (2) interpreters cannot adequately convey a witness' voice inflection or the more subtle nuances of verbal communication, thereby precluding a deaf person or a person with a substantial hearing impairment from considering factors as important as the communication itself in assessing the credibility of a witness; (3) a deaf juror cannot observe the demeanor of a witness and at the same time pay the necessary attention to the communications or manual sign language of the interpreter; and (4) the presence of an interpreter during jury deliberations would violate the secrecy traditionally associated with the jury room and would constitute reversible error in the trial of a criminal case. Lastly, the defendants argue that the statutory disqualification is rationally related to a legiti-

mate, if not a compelling, state interest, *i. e.,* providing a person accused of a criminal offense with a trial before a panel of jurors who are competent to adequately receive and evaluate all the evidence presented at the trial.

The principal issue in this case, as previously indicated, is whether section 39–102(f), *supra,* violates the mandates of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Careful consideration has been given to the arguments made by the respective parties on this issue not only because of the importance of the case to the parties, but because of the very nature of the case itself. While constitutional challenges to state jury selection laws have not been uncommon, the facts in this particular case present constitutional questions of first impression.

This case deals with the fundamental right of the State to prescribe qualifications for its prospective petit jurors, but even more importantly, it deals with constitutionally imposed limitations on that authority. Any meaningful analysis of the limitations imposed upon the State of Arkansas' authority in this area must, of necessity, include a review of the State's authority in the first instance.

In *Rawlins v. Georgia,* 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906), the appellant, a convicted murderer sentenced to life imprisonment, challenged the constitutionality of a Georgia statute which exempted persons in certain occupational classes (lawyers, doctors, ministers, preachers, engineers, dentists and firemen) from serving as jurors. The appellant contended that the exclusion of persons in these occupational classes deprived him of a fair trial under the Fourteenth Amendment since these classes of persons could provide a perspective to a jury panel that would not otherwise be present. The appellant's argument, in essence, was an early assertion of a denial of the right to be tried before a jury composed of a fair cross section of the community. Justice Holmes, rejecting the appellant's Fourteenth Amendment Due Process argument, held that there was nothing in the Fourteenth Amendment which prevented a State from excluding and exempting from jury duty certain classes on the *bona fide* ground that the welfare of the community required that their regular work continue uninterrupted.

■ During the decades following the *Rawlins* decision the Court, on several occasions, again addressed Fourteenth Amendment problems as they arose through the application of state jury selection laws. Virtually all of the Supreme Court's decisions in this area dealt with the exclusion of racially identifiable segments of the population through the operation of state jury selection laws. *Arnold v. North Carolina,* 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964) *per curiam; Eubanks v. Louisiana,* 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); *Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); *Hill v. Texas,* 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); *Pierre v. Louisiana,* 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939); *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); *Hollins v. Oklahoma,* 295 U.S. 394, 55 S.Ct. 784, 79 L.Ed. 1500 (1935) *per curiam; Sims v. Georgia,* 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967) *per curiam; Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Coleman v. Alabama,* 377 U.S. 129, 84 S.Ct. 1154, 12 L.Ed.2d 190 (1964); *Patton v. Mississippi,* 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); *Hale v. Kentucky,* 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050 (1938) *per curiam; Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935). A body of case law slowly emerged from these decisions regarding the authority of states to specify qualifications for prospective state jurors as well as the constitutional limitations placed upon the exercise of that authority. Recognition of the states' interests in determining juror qualifications found expression in the Court's opinion in

the case of *Brown v. Allen,* 344 U.S. 443, 473, 73 S.Ct. 397, 416, 97 L.Ed. 469 (1953). In *Brown, supra,* Justice Reed, speaking for a majority of the Court, stated that: "States should decide for themselves the quality of their juries as best fits their situation *so long as the classifications have relation to the efficiency of the jurors and are equally administered.*" [emphasis added] The states' interests in establishing qualifications for persons who might serve as jurors in state court trials were reiterated by the Court in *Carter v. Jury Commission of Greene County,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970). Justice Stewart summarized the Court's decisions relating to this issue as follows:

It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. "Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." (citations omitted) (at pages 332–33, 90 S.Ct. at page 525.)

*Carter, supra,* was the first case to reach the United States Supreme Court in which an attack upon alleged racial discrimination in choosing juries had been made by a plaintiff seeking affirmative relief, rather than by defendants challenging judgments of criminal convictions. The Court's guidelines in this area were recently reaffirmed in *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). *Taylor, supra,* dealt with a constitutional challenge to provisions of Louisiana's law which exempted women from jury service unless a certificate was filed expressing a desire to serve. The Court, overruling its earlier decision in *Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), struck down the law on the basis that it violated the fair cross section concept, a concept which the Court found fundamental to the Sixth Amendment's jury trial guarantee. The Court, in passing upon the constitutional issue, again noted that:

The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community. *Carter v. Jury Comm'n, supra,* as did *Brown v. Allen, supra; Rawlins v. Georgia, supra;* and other cases, recognized a broad discretion in the States in this respect. We do not depart from the principles enunciated in *Carter.* But, as we have said, Louisiana's special exemption for women operates to exclude them from petit juries, which in our view is contrary to the command of the Sixth and Fourteenth Amendments.

It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, *Fay v. New York,* 332 U.S. 261, 284 [67 S.Ct. 1613, 91 L.Ed. 2043] (1947); *Apodaca v. Oregon,* 406 U.S., 404 at 413 [92 S.Ct. 1628, 32 L.Ed.2d 184] (plurality opinion); but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

The plaintiff's fundamental claim for relief is premised upon the provisions of 42 U.S.C. § 1983. That statute provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Since the relief afforded by this section extends exclusively to federally created or protected rights, *Tucker v. Duncan*, 499 F.2d 963 (4th Cir. 1974), a claim for relief must allege that there has been a deprivation, under color of state law, of a "right, privilege or immunity secured by the Constitution . . . ." The defendants contend, in their Motion To Dismiss, that the plaintiff has failed to state a claim upon which relief can be granted. Such a contention misinterprets the essential thrust of the plaintiff's claim. The plaintiff has not contended, as suggested by the defendants, that she has a "right to serve as a juror." No one, whether male or female, black or white, hearing or non-hearing, can be assured that they will actually serve as a juror. The usual statutory procedure of allowing litigants in civil and criminal actions to exercise a designated number of peremptory challenges (challenges which are exercised without specification of cause) wholly vitiates arguments to the contrary. The plaintiff has, however, alleged that she has been excluded or disqualified from the petit jury selection process in Arkansas by virtue of the operation of the state statute in question. The alleged constitutional deprivation may thus be characterized as a negative right or interest, "the right not to be invidiously excluded from the jury selection process", rather than as an affirmative one such as, "the right to serve as a juror." The plaintiff's standing to assert such a right is no longer subject to serious dispute, for it is now recognized that defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection. *Carter v. Jury Commission of Greene County, supra.* It is equally well recognized that action by a state in arbitrarily depriving a person of the opportunity to serve on a jury is a violation of a right secured by the United States Constitution and that federal courts have jurisdiction to grant relief under 42 U.S.C. § 1983. *Bradley v. Judges of the Superior Court for the County of Los Angeles*, 372 F.Supp. 26 (C.D.Cal.1974). This Court, therefore, is satisfied that the plaintiff has alleged an equal protection claim cognizable under the provisions of 42 U.S.C. § 1983.

■ The United States Supreme Court established guidelines for scrutinizing legislative schemes allegedly constituting violations of the Equal Protection Clause in its landmark decision in *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The principles of equal protection analysis enunciated by the Court in *Rodriguez, supra*, require the reviewing court to initially determine whether the accused system discriminates against a "suspect" class (one that has been a traditional or perennial victim of discrimination, or politically powerless) or "impinges upon a fundamental right explicitly or implicitly protected by the Constitution." (at page 17, 93 S.Ct. at page 1288.) If the statutory classification in question discriminates against a "suspect" class or impinges upon a fundamental right, it is constitutionally sufficient for purposes of the Equal Protection Clause only if a "compelling state interest" justifies the existence of the classification. If, on the other hand, the legislative scheme is not directed against a suspect class and does not impinge upon a fundamental constitutional right, it must be upheld if "it rationally furthers some legitimate, articulated state purpose." 411 U.S. at page 17, 93 S.Ct. at page 1288.

The legislative classification in question is created by Ark.Stat.Ann. § 39–102(f). The statutory scheme disqualifies deaf persons or persons with "substantial hearing impairments" from serving as petit jurors in the State of Arkansas. The provision, on its face, does not appear to be invidiously discriminatory. The exclusion created by the statute applies equally to persons of all races, ethnical groups, sexes, religions and socio-economic backgrounds. Thus, the legislative classification in the present case is not premised upon any criteria traditionally considered as "suspect."

The next relevant inquiry into the alleged equal protection violation concerns whether the statutory discrimination impinges upon a fundamental right explicitly or implicitly protected by the Constitution. *San Antonio Independent School District v. Rodriguez, supra.* It must be stressed that a right may be considered "fundamental" for constitutional purposes without being expressly mentioned in the Constitution. The United States Supreme Court has for instance, held that "fundamental rights" include such rights implicitly protected by the Constitution as the right to privacy, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the right to vote, *Harper v. Virginia Board of Education,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), and the right to travel interstate, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

In the case of *Adams v. Superior Court of San Diego County,* 12 Cal.3d 55, 115 Cal. Rptr. 247, 524 P.2d 375 (1974), the California Supreme Court thoughtfully analyzed the interest of an individual in serving on a jury by cogently observing that:

> While trial by jury is constitutionally implanted in our system of justice, an individual's interest in serving on a jury cannot be held a fundamental right. *The guarantee of the Sixth Amendment is primarily for the benefit of the litigant— not persons seeking service on the jury;* and even though lawfully qualified, a citizen may not demand to serve on a jury. At most, the citizen is entitled to be considered for jury service. His interest in becoming a juror is clearly secondary to the interests of the litigants in securing an impartial jury, as shown by the traditional exclusion of prospective jurors for cause or upon peremptory challenge. Jury service is commonly viewed more as a combination of duty and privilege than as a right, sanctions being imposed for failure to appear. (emphasis added)

See also, *Bradley v. Judges of the Superior Court for the County of Los Angeles, supra* (strict judicial scrutiny not required for review of dual jury selection system); *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed.

469 (1953) (Justice Reed referred to jury service as a "civic duty") (at page 474, 73 S.Ct. 397); *Carter v. Jury Commission of Greene County,* 396 U.S. 320, 330, 90 S.Ct. 518, 24 L.Ed.2d 549 (Justice Stewart declined to characterize jury service as either a right or privilege). This court agrees with the California Supreme Court's analysis of the individual's interest in serving on a jury. That court's holding in *Adams, supra,* places the individual's role in proper perspective by recognizing that the interests of litigants supersede any other interest an individual may have in serving on a jury. Recognition of the litigant's superior interest is particularly appropriate within the context of criminal proceedings, proceedings which virtually always present the potential for affecting vital liberty interests. This court, accordingly, holds that the plaintiff's interest in serving as a juror in the Pulaski County Circuit Court is not a "fundamental right" explicitly or implicitly protected by the United States Constitution.

Since Ark.Stat.Ann. § 39–102(c) and (f) neither creates a suspect classification nor precludes the exercise of any fundamental right or privilege, the test of strict judicial scrutiny need not be applied in resolving the constitutional legitimacy of the challenged provisions. The legislative scheme is constitutionally sufficient for equal protection purposes if the statutory classification, *i. e.,* the disqualification of persons with substantial hearing impairment, is rationally related to some legitimate state objective. The guidelines for resolving this issue were summarized in the following pertinent admonition in Chief Justice Warren's opinion in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961):

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests upon grounds wholly irrelevant to the achievement of

the State's objective, State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (at pages 425–26, 81 S.Ct. at page 1105.)

The plaintiff's request for a temporary injunction was set for hearing before this Court on April 27, 1978. The parties stipulated that the action for declaratory judgment could be considered on its merits at the hearing on said date. The parties were given the opportunity of presenting evidence and the plaintiff testified at length. Testimony was also received from Mr. Clarence F. Landon, her interpreter. During the proceedings it was obvious to the Court that although Ms. Eckstein was very intelligent and could follow the interpreter most of the time, occasionally he had to repeat the context of the matter which he was interpreting to insure her understanding. It was also obvious on direct and cross-examination of Ms. Eckstein that she of necessity had to keep her eyes constantly on the interpreter and could not watch the facial expressions of the attorneys asking questions, hear their voice inflections, and follow their intonation pattern. It was apparent to the Court that her evaluation of the witnesses' testimony, if she were in fact selected to serve on a jury, would be somewhat limited by the lack of ability to use these factors in assessing the testimony. Also, in the deliberations thereafter in the jury room her understanding of the opinions of the other jurors would of necessity be impeded, delayed and somewhat limited by having each remark made by each juror relayed to her through the interpreter. Her reactions to the opinions of other jurors would, of course, depend to some extent on the manner in which the interpreter viewed and relayed to her their remarks.

Also, even further delay might be occasioned if highly technical testimony were being presented by an expert in the trial of the case, or if complex medical testimony of a doctor were being presented. In this connection the Court quizzed Mr. Landon about the limited vocabulary available through manual sign language and also about his ability to interpret testimony of a complicated or technical nature. He responded that his qualifications were above the average and that he thought he had the ability to do so. When asked about interpreters who were average or perhaps not of that standard, he testified that the Code of Ethics for Interpreters provided that the interpreter should excuse himself and ask that another interpreter be provided if the matter being interpreted was beyond his ability to explain. Delays could arise from this complication as well as other unforeseen contingencies and it would be most difficult to assure that all parties would receive an expeditious and a fair trial.

Ms. Eckstein is certainly to be commended for her desire to serve on the jury. She is also to be commended for her accomplishments in the world of business, as indicated by the responsible position which she currently holds. The court recognizes too that Ms. Eckstein and many others with handicaps and disabilities have overcome them and have in some fields far surpassed those of us who consider ourselves physically unimpaired. However, despite my admiration for plaintiff's achievements and my understanding of her desiring to serve as a juror and her contentions in this connection, logic, reason, and fairness to litigants in our courts compel denial of her complaint. When instructions [1] are given to the jury, this court always instructs the jurors not to let sympathy or personal feelings influence their verdicts in any way, so the court too must adhere to those standards which are prescribed for the jury. Though she does many other things expertly, the court reluctantly finds that Ms. Eckstein might not be able to give a litigant a fair trial because of her hearing disability. The interest of the plaintiff in becoming a juror must be secondary to the interest of the state in assur-

---

1. In federal court the instructions are always lengthy in criminal cases and the interpreter might experience difficulty in conveying their content to the plaintiff.

ing a fair trial to the litigants in its courts. The entire record in the case convinces the court that Arkansas' legislative action legitimately promotes and is rationally related to a valid state interest and the classification established here is a reasonable one.

The Sixth Amendment's jury trial guarantee is obligatory in state criminal proceedings by virtue of the Fourteenth Amendment's Due Process Clause. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The state's interest in criminal jury trials is thus a constitutionally mandated interest. And, while the Constitution expressly guarantees the right itself, it makes no provision for effectuating the exercise of the right, the matter of implementation being left largely to the states. If the state is to comply with the requirements of the Sixth Amendment, it must provide juries and must likewise provide the mechanism for obtaining prospective jurors meeting minimum levels of competence. A panel of potential veniremen must possess the physical and mental attributes necessary to adequately receive and evaluate the evidence presented.

In *Lewinson v. Crews*, 28 A.D.2d 111, 282 N.Y.S.2d 83 (1967), *aff'd* 21 N.Y.2d 898, 289 N.Y.S.2d 619, 236 N.E.2d 853 (1968), *remittitur amended*, 21 N.Y.2d 1004, 290 N.Y.S.2d 924, 238 N.E.2d 326 (1968), *appeal dismissed*, 393 U.S. 13, 89 S.Ct. 46, 21 L.Ed.2d 12 (1968), the court held that a totally blind person was properly disqualified from jury service on the basis of a New York law requiring that a juror be "in possession of his natural faculties." The court indicated that the disqualification of a sightless person was reasonable in light of "the practical duties and responsibilities which fall upon a juror," duties which include assessing the credibility of the witnesses, and "the effect his disability would have on the orderly and practical operation of the court's processes." *Id.*, 282 N.Y.S.2d at 85–86. The state appellate court rejected the contention that such disqualification violated the equal protection and due process clauses of the Fourteenth Amendment, and the United States Supreme Court dismissed the appeal from the state court for want of a substantial

federal question. The decision in *Lewinson, supra,* articulates the obvious. Impairment of the senses, particularly the senses of sight and hearing, vitiates a person's ability to serve effectively as a juror. Evidentiary analysis, a juror's primary function, requires an unimpeded perception, for without the ability to perceive there is no ability to evaluate, reconcile or judge. *The sense of hearing is, indeed, perhaps even more important to effective service as a juror than the sense of sight. This conclusion is buttressed by the realization that most evidence consists of oral testimony and that the function of a juror will largely be that of assessing the credibility of witnesses and analyzing testimony.* The importance of the sense of hearing to the function of a juror was very adequately expressed by the court in *Commonwealth v. Brown*, 231 Pa. Super. 431, 332 A.2d 828 (1974). The court observed in *Brown, supra,* that: ". . . The presence of a juror with a physical impairment of such magnitude as to interfere with the juror's ability to hear and understand the presented testimony and evidence precludes a verdict by all jurors. Such a disability would render the juror incompetent to serve and would deny (the defendant's) right to an impartial jury and fair hearing." 332 A.2d at 831. See also *Higgins v. Commonwealth*, 287 Ky. 767, 155 S.W.2d 209 (1941); *State v. Berberian*, 374 A.2d 778 (R.I.1977); *Rhodes v. State*, 121 Ind. 189, 27 N.E. 866 (1891); *State v. Reed*, 206 La. 143, 19 So.2d 28 (1944); *Safran v. Meyer*, 103 S.C. 356, 88 S.E. 3 (1916); *Annot., Deafness of Juror as Ground for Impeaching Verdict, or Securing New Trial or Reversal on Appeal*, 15 A.L.R.2d 534 (1951). These decisions underscore the proposition that physically qualified jurors are essential to any meaningful exercise of the Sixth Amendment's jury trial guarantee and to the fulfillment of the concept of a fair trial. This court, accordingly, holds that the State of Arkansas has a legitimate interest in providing physically competent jurors for trials in criminal cases, and further, that the disqualification from jury service of persons with substantial hearing

1244

impairments, the disqualification embodied in Ark.Stat.Ann. § 39–102(f), rationally relates to and furthers that legitimate state interest.

■ The facial validity of Ark.Stat.Ann. § 39–102(f) is sustained by yet another important consideration, the secrecy traditionally associated with jury deliberations. The plaintiff, according to the undisputed evidence before this Court, could not have participated in the jury's deliberations without the assistance and presence in the jury room of an interpreter. While the Supreme Court of Arkansas has not had an occasion to address the issue of the presence of a "thirteenth man" in the jury room, those jurisdictions that have considered the problem within the context of a criminal proceeding have uniformly held that the presence of a person in the jury room, other than the twelve persons deciding the case, violates the concept of trial by jury by invading the jury's expectation of privacy, thereby inhibiting a vigorous and candid discussion of the issues. *People v. Knapp*, 42 Mich. 267, 3 N.W. 927, 36 Am.R. 438 (1879); *Acosta v. State*, 126 Tex.Cr. 618, 72 S.W.2d 1074 (1934); *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972); *Brigman v. State*, 350 P.2d 321 (Okl.Cr.1960). This rule has even been extended to the presence of alternate jurors not allowed to vote. *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975); *State v. Cuzick*, 85 Wash.2d 146, 530 P.2d 288 (1975); *Berry v. State*, 298 So.2d 491 (Fla.App.1974); *United States v. Virginia Erection Corporation*, 335 F.2d 868 (4th Cir. 1964). This court is satisfied that the Supreme Court of Arkansas, if confronted with the presence of a thirteenth person during jury deliberations, would hold that such a practice violates the secrecy of the jury room and thereby deprives an accused person of their right to trial by jury under the Sixth and Fourteenth Amendments to the United States Constitution and Art. 2 § 10 of the Arkansas Constitution. That court has sought to vigorously maintain the integrity of jury deliberations by expressing its disapproval of any attempt, however motivated, to influence the actions of the jury. *Cf., Bush v. State*, 261 Ark. 577, 550 S.W.2d 175 (1977) (trial judge's private communications with deadlocked jury as to the authority of the governor to pardon and the effect of parole laws held improper and prejudicial).

■ Since there is ample justification for the classification created by Ark.Stat.Ann. § 39–102(f), it is unnecessary for this court to address the other contentions relevant to the equal protection issue which have been raised by the parties. It is likewise unnecessary to address the constitutional validity of Ark.Stat.Ann. § 39–102(c) (Supp.1977). This court's jurisdiction is limited to the consideration of "actual cases and controversies", questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The limitations on this court's authority are clearly expressed in the well established rule that federal courts do not render advisory opinions on matters that are abstract or hypothetical. *Flast, supra; Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Thus, while this court has a solemn obligation to address constitutional issues squarely presented by the application of state laws, *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), it would be an impermissible exercise of this court's jurisdiction to express an opinion upon the validity of a state statute in the absence of a case or controversy involving the statute. *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). The plaintiff's disqualification, as revealed by the evidence in the case, was premised upon the trial judge's determinations that the plaintiff's sense of hearing was substantially impaired within the meaning of Ark.Stat.Ann. § 39–102(f) and that the plaintiff, if selected to serve as a juror, would require the presence of an interpreter during jury deliberations. The mere fact that the parties have stipulated that the plaintiff would be qualified to serve as a petit juror but for the provisions of Ark.Stat.Ann. § 39–102(c) and (f) (Supp. 1977), neither justifies an inference nor es-

tablishes that the trial judge relied upon the provisions of section 39–102(c) in disqualifying the plaintiff from jury service. Since this court finds that the constitutional validity of section 39–102(c) is not presented within a factually adversarial context, consideration of the validity of that statutory provision would be inappropriate.

The plaintiff's final contention is that Ark.Stat.Ann. § 39–102(f) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Since equal protection and due process considerations often merge in the review of legislative classifications, any claimed deprivation of substantive due process is rendered moot by this court's decision on the equal protection issues. Substantive due process claims are further nullified by the statute itself since the scope of the statute is limited to those persons whose sense of hearing is "substantially impaired". The plaintiff's argument that the statute arbitrarily and capriciously disqualifies her from jury service, a contention which essentially states a procedural due process claim, is likewise without merit. The question of whether a person is legislatively disqualified from jury service under section 39–102(f) is a question of law, the resolution of which depends upon preliminary factual determinations by the trial court. Or, alternatively stated, whether a person is qualified to serve as a juror is a matter committed to the sound discretion of the trial court. In the present case, the plaintiff was disqualified from jury service only after appearing before the trial court and submitting to routine voir dire. The voir dire examination provided the trial judge with an opportunity, the only opportunity as a procedural matter, to observe the plaintiff and to determine factually whether the plaintiff was physically competent to serve as a juror. This court therefore holds that the trial judge's factual determinations and interpretation of state law do not raise a valid due process issue.

It is appropriate at this point to place this court's role in proper perspective. This court's responsibility is limited to an assessment of the constitutional requirements of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and to a determination of whether the state law in question complies with the mandates of the Fourteenth Amendment. It is not the function of this court to second guess the wisdom of the state legislative enactments questioned by this action. The judicial branch of government is ill equipped to undertake determinations of public policy, matters which, under the doctrine of separation of powers, are more appropriately committed to the legislative branch of government. These matters are emphasized merely to clarify this court's opinion. Nothing in this opinion should be construed as foreclosing any reassessment of the policy expressed by the statutory provisions questioned by this action. This court merely holds that Ark.Stat.Ann. § 39–102(f) (Supp.1977), a state law which disqualifies from jury service persons whose sense of hearing is substantially impaired, does not violate the requirements of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.