OPINION OF THE COURT
David B. Saxe, J.
There is an intensifying national concern regarding the issue of whether blind and deaf persons should serve as jurors.[1] In this case, a personal injury matter involving substantial amounts of physical evidence, a blind person was sought to be excluded from jury service through the use of a challenge for cause based solely on his blindness. The issue that I must decide is whether his exclusion was improper under Judiciary Law § 510 (3). The facts in this particular case compel the court to grant the challenge for cause.
*586 Initially, this case does not concern the issue of whether a litigant’s right to a fair trial by an impartial jury is being infringed upon[2] but rather what is involved here is a statutory interpretation of Judiciary Law § 510 (3), as amended in 1983.
Previously, the relevant New York statute regarding juror qualifications was Judiciary Law § 596 (3). This section provided:
“In order to be qualified to serve as a juror * * * a person must:
“3. Be in the possession of his natural faculties and not infirm or decrepit.”
Under this statute, blind individuals were systematically disqualified from jury service. In Matter of Lewinson v Crews (28 AD2d 111 [2d Dept 1967], affd 21 NY2d 898 [1968], appeal dismissed 393 US 13 [1968]) the court held that a blind person was not qualified to be a juror under Judiciary Law § 596 (3) because he did not possess the “natural faculties” required by the statute. The court stated that the term “natural faculties” dealt with an individual’s physical attributes since it is used conjunctively in the statute with the term “infirm and decrepit” — essentially physical characteristics.
Judiciary Law § 596 was later amended and became Judiciary Law § 510 (3), which, prior to its 1983 amendment, provided:
*587 “In order to qualify as a juror a person must:
“3. Be in possession of his natural faculties and not incapable, by reason of mental or physical infirmity, of rendering satisfactory jury service.”
The constitutionality of Judiciary Law § 510 (3), as applied to a blind person who was disqualified from being a juror, was upheld by the courts in Jackanin v Carey (476 F Supp 420 [EDNY 1979], affd 633 F2d 204 [2d Cir 1980]). The court dismissed the blind plaintiff’s complaint which alleged Judiciary Law § 510 (3) deprived him of equal protection under the 14th Amendment.
Thus, the case law prior to the 1983 amendment has consistently held that blind persons are properly excluded from jury service under the New York statute.
In September of 1983 Judiciary Law § 510 (3) was amended and now provides:
“In order to qualify as a juror a person must:
“3. Not have a mental or physical condition, or combination thereof, which causes the person to be incapable of performing in a reasonable manner the duties of a juror.”
This case, involving the issue of whether a blind person was improperly excluded from the jury through the use of a cause challenge, is the first to arise in New York since the 1983 amendment took effect.
In People v Guzman (125 Misc 2d 457 [Supreme Ct, NY County, 1984]), the court held that a juror who was otherwise qualified could not be excluded for cause merely on the basis of his deafness. In formulating its decision, the court relied heavily on the legislative history of Judiciary Law § 510 (3)’s amendment and the importance of the legislators’ intent in passing a statute.
The Legislature, in its memorandum, stated that the purpose of the proposed changes were: “ ‘[T]o remove the arbitrary prohibition against persons with “physical infirmity” from being impanelled for jury duty and, by so doing, to increase the number of people who would be available for jury duty, while at the same time, making New York’s law accord with the regulations promulgated and proposed under Section 504 of the Rehabilitation Act of 1973, as amended.’” (People v Guzman, 125 Misc 2d 457, 460, supra.) Prior to the enactment of the statute, the provision which referred to “natural faculties” was understood as excluding “ ‘as jurors certain disabled individuals on the basis of their perceived inability to perform functions which have no effect on actual jury service’ ” (p 461).
*588 The court went on to state: “A canon of statutory construction says that ‘As a general rule, the legislative intent with which statutes are enacted is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and from the objects and remedy in view * * * and in passing upon matters of legislative intent and competence, the courts do not merely read the bare end product of the legislative labors, but rather they read the statute in light of the * * * facts which were found by the Legislature and which prompted the enactment.’ ” (People v Guzman, 125 Misc 2d 457, 461, supra.)
The court in People v Guzman (supra) concluded that the mischief which the Legislature sought to remedy in amending Judiciary Law"§ 510 (3) was the predetermination that individuals with physical disabilities are incapable of serving as jurors. The court stated that: “In order to advance the remedy, the qualifications of the individual prospective juror, as they relate to a [particular] case, should be examined” (supra, pp 461-462).
Similarly, when considering the competence of a blind person, the court must determine whether the person’s impairment would preclude him from serving as a reasonable juror in that particular case. Physical handicaps, such as blindness, must be treated like any other disability when determining whether a prospective juror should be held incompetent to serve on a jury and thus removed for cause. It is therefore important to look at the duties and responsibilities of the jury and determine whether a blind individual is incapable of performing these duties.
In.Lewinson (28 AD2d, at p 113) the court stated that the various practical duties and responsibilities which fall upon a juror include:
1. Evaluating physical evidence such as still photographs, moving pictures, mechanical objects, and diagrams drawn on a blackboard, and;
2. Determining a witness’ veracity by his facial expressions and body movements.
Physical evidence is often an important aspect of a trial though not every trial includes the use of physical evidence. For example, in commercial cases, where little or no physical evidence is involved, blindness would not render an individual incapable of performing his duty as a juror. However, when a significant portion of the evidence in a particular case is physical, the blind individual should clearly be excluded from serving as a juror. (Note, Due Process: The Deaf and the Blind as Jurors, 17 New Eng L Rev 119, 145 [1981].)
*589 In this case, a significant amount of the evidence consisted of physical evidence, the interpretation of which by the jurors would be extremely important in reaching their verdict. The blind individual would thus be at a disadvantage during jury deliberations in following the court’s instructions to consider all evidence presented at trial. Therefore the blind individual’s inability to visually perceive the physical evidence involved is the primary reason for excluding him from this particular jury.
In addition to a blind person’s inability to evaluate physical evidence, another reason stated in past decisions as to why blind persons could not be effective jurors is their inability to evaluate the body movements of a witness. The court in Lewinson (28 AD2d, at p 113), while recognizing that voice intonations play a part in determining veracity, suggested that voice intonation is not in and of itself an effective means of determining veracity but must be determined along with body movements. This court, however, is of the opinion that body movements and voice intonations are only two examples of how an individual proceeds to formulate attitudes on veracity. I am not of the opinion that merely because a juror lacks the ability to see, he is any less able to determine the credibility of a witness’ testimony through the use of his other facilities.
Moreover, during jury deliberations the jury works together to formulate a decision. Therefore, a blind person’s perceptions as to voice intonation may be supplemented by the other jurors’ perceptions of body movements and together, a determination of veracity may be made. Blindness does not disable one to be a lawyer or a judge; it is contradictory to use the defect as the sole basis for rejecting a juror, especially since the juror does not act alone but in conjunction with the other persons on the jury to reach a joint determination. (Matter of Lewinson v Crews, supra, dissenting opn.)
While I admire this individual’s desire to be a juror and believe that in a proper case a blind person may be an effective juror, the facts of this case simply preclude effective participation by a blind juror. Accordingly, I hold that the blind individual in this particular case is not competent to serve as a juror and the motion challenging him for cause is granted.

. This is evidenced by the growing number of States enacting legislation which explicitly allow blind and/or deaf persons to serve as jurors. Six States explicitly allow blind persons to serve as jurors. (Cal Civ Proc Code §§ 198, 205; Mass Gen Laws Ann ch 234, § 4; Ore Rev Stats § 10.030; Tex Civ Stat Ann, art 2133; Wash Rev Code Ann § 2.36.070 [1980]; Wis Stats Ann § 756.01 {1980]; see, Note, Due Process: The Deaf and the Blind as Jurors, 17 New Eng L Rev 119 [1981].)

. The Federal Constitution, 6th Amendment, guarantees that “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed”.
In Duncan v Louisiana (391 US 145 [1968]), the court applied the 6th Amendment through the due process clause of the 14th Amendment. Although the 7th Amendment right to jury trials has not been incorporated into the 14th Amendment, the principles developed under the 6th Amendment are logically applicable to civil trials. (Comment, Jury Selection: The Courts, the Constitution, and the Deaf, 11 Frac LJ 967, 970 [1980].) With respect to civil trials, in both the pre-Duncan era and, today, the theory was and is that if a State chooses to provide jury trials it must do so on terms that comport with notions of due process and equal protection {id., at 970, n 20).
An “impartial jury” has been interpreted to mean one drawn from a cross section of the community. {Id., at 970.) Although cross-sectionalism does not require representation of every group in the community on every or any jury actually chosen (Taylor v Louisiana, 419 US 522 [1974]), the notions of a fair trial prohibit systematically excluding any one group of individuals from a specific jury. (See, People v Wheeler, 22 Cal 3d 258, 583 P2d 748 [1978].) The fact that the exclusion is the result of a legislative act clearly qualifies the exclusion as systematic. (Comment, op. cit, at 970.)
In this case the only claim is whether the cause challenge was properly granted under Judiciary Law § 510 (3) not whether the exclusion of this juror is unconstitutional under Judiciary Law § 510 (3) and therefore no claim is raised regarding the actual composition of the jury.