COMMONWEALTH vs. FRANK J. SUSI.

Middlesex.  January 7, 1985. — May 9, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Jury and Jurors. Practice, Criminal*, Challenge of jurors. *Constitutional Law*, Jury. *Evidence*, Composite drawing, Out-of-court statement.

Where the predominant issue at the trial of an armed robbery indictment was identification of the defendant as the robber, the judge's refusal to excuse a blind prospective juror for cause, thereby necessitating the defendant's exhaustion of his peremptory challenges, required reversal of the conviction without a showing of actual prejudice. [786-789]

At the trial of an armed robbery indictment, a written description of the robber accompanying a composite drawing was not admissible in evidence where there was no evidence as to the source of the descriptive statement. [789-790]

INDICTMENT found and returned in the Superior Court Department on August 30, 1983.

The case was tried before *Elizabeth J. Porada*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Karen J. Kepler*, Assistant District Attorney (*Margot Botsford*, Assistant District Attorney, with her) for the Commonwealth.

LIACOS, J. On August 30, 1983, a Middlesex County grand jury indicted the defendant, Frank J. Susi, for armed robbery and two counts of assault by means of a dangerous weapon. A jury found him guilty on the indictments, and he was sentenced to the Massachusetts Correctional Institution at Concord for a term of twenty years.[1] The defendant filed a notice of

---

[1] The judge placed on file, without the defendant's objection, the findings of guilty of two counts of assault by means of a dangerous weapon, and they are not before us on this appeal.

appeal, and we transferred the case to this court on our own motion.

At about midnight on the night of November 21, 1982, a robbery occurred at a restaurant in Watertown. Three restaurant employees, Kevin Mark Dennis, Richard Binell, and Marie Sweeney, described the robber to a police officer who arrived at the restaurant shortly after the robbery occurred. Several days later, Dennis and Binell identified a photograph of the defendant as that of the perpetrator. Dennis, Sweeney, and a police officer also created a composite drawing of the robber.

In June, 1983, the defendant was arrested. When asked to identify the perpetrator from among persons present at the defendant's probable cause hearing, Binell identified the defendant, but Dennis identified someone other than the defendant.[2]

At trial, Dennis and Binell identified the defendant and testified extensively concerning variances between the physical appearance of the robber and that of the defendant as depicted in photographs selected shortly after the robbery, and of the appearance of the defendant at the time of the probable cause hearing and at the trial. The defendant submitted photographic evidence of his appearance at the time of the alleged offense. The man whom Dennis identified as the robber at the probable cause hearing appeared as a defense witness and stood beside the defendant so that the jury could compare their physical appearances.

Also at trial, defense counsel sought to admit the composite drawing, together with an accompanying description of the robber. The words "large teeth" appeared in the description. Neither Dennis nor Binell recalled having given the police officer a description of the robber's teeth. The trial judge sustained the prosecutor's objection to the written description on the ground of lack of foundation, and only the composite drawing was admitted in evidence. Subsequently, the police officer who had arrived at the restaurant after the robbery testified

---

[2] Marie Sweeney had moved out of the State subsequent to the robbery and did not appear at the probable cause hearing, nor did she testify at the trial.

that one of the three employees had described the robber as having "large, even, white teeth." The police officer did not remember which employee had given the description of the teeth. The trial judge permitted the defendant to show his teeth to the jury.

The defendant first argues that the trial judge erred in denying his challenge for cause of a juror who was blind. The defendant contends that this denial was an abuse of discretion and constitutional error because the case against him was one of eyewitness identification; viewing and visually comparing the physical evidence was of major importance. The defendant asserts that, because of this error, he was forced to expend a peremptory challenge to obtain a panel of jurors capable of viewing the physical evidence. The subsequent exhaustion of his peremptory challenges required that he later accept a juror whom he otherwise would have challenged. The defendant argues that reversal is required without a showing of prejudice. We agree that there was error and that the defendant need not show actual prejudice. Hence, we reverse the conviction.

Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution, applied to the States through the due process clause of the Fourteenth Amendment, guarantee to the criminally accused the right to a trial by an impartial jury. *Commonwealth* v. *Soares*, 377 Mass. 461, 478-480, cert. denied, 444 U.S. 881 (1979). *Commonwealth* v. *Bellino*, 320 Mass. 635, 638-642, cert. denied, 330 U.S. 832 (1947). *Jones* v. *Robbins*, 8 Gray 329, 341-342 (1857). *Duncan* v. *Louisiana*, 391 U.S. 145, 149 (1968). See G. L. c. 263, § 6, and G. L. c. 278, § 2 (jury trials in the Superior Court). Cf. *King* v. *Grace*, 293 Mass. 244, 246-247 (1936) (art. 11 requires trial before impartial judges). The failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process. *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961). "Fundamental to the right of an 'impartial' jury is the requirement that jurors be competent and qualified. '[T]rial by jury necessarily requires a jury which is able to comprehend and intelligently resolve the factual issues submitted to its verdict.' *Rabinowitz* v. *United States*,

366 F.2d 34 [,92] (5th Cir. 1966). (Coleman, J. concurring in part and dissenting in part)." *State* v. *Berberian,* 118 R.I. 413, 418 (1977). See also *Commonwealth* v. *Brown,* 231 Pa. Super. 431, 435-436 (1974) (construing United States Constitution and corresponding provision of Pennsylvania Constitution); *Peters* v. *Kiff,* 407 U.S. 493, 501 (1972) (due process requires that jurors be mentally competent during trial). Cf. *Jordan* v. *Commonwealth,* 225 U.S. 167, 176 (1912) ("[D]ue process implies a tribunal both impartial and mentally competent to afford a hearing").

It is well settled that G. L. c. 234, § 28, gives a trial judge discretion to exclude potential jurors because of a relationship to a party, *Bigelow* v. *Sprague,* 140 Mass. 425, 429 (1886); an interest in the case, *Commonwealth* v. *O'Neil,* 6 Gray 343, 346 (1856); an opinion concerning the case, *Commonwealth* v. *Subilosky,* 352 Mass. 153, 158-160 (1967); bias or prejudice, *Commonwealth* v. *Buzzell,* 16 Pick. 153, 155 (1834); or for other grounds, *Commonwealth* v. *Stewart,* 359 Mass. 671, 677 (1971). See also *Lias* v. *United States,* 51 F.2d 215, 217 (4th Cir. 1931) ("The trial court is invested with a wide discretion in determining the competency of the jurors, and the court's judgment in this respect will not be interfered with except for an abuse of . . . discretion"); *Lyda* v. *United States,* 321 F.2d 788, 791 (9th Cir. 1963). Implicit in § 28 is the notion that the discretion to exclude jurors extends to those not competent to serve because of physical disabilities. Indeed, the Legislature has recognized that not all eligible jurors will be able physically to serve. See G. L. c. 234A, § 4, subparagraph 4.

In addition, we have granted criminal defendants a new trial where jurors have been exposed to publicity concerning the case, thereby violating the defendant's fundamental right to a fair trial. See, e.g., *Commonwealth* v. *Crehan,* 345 Mass. 609 (1963). A defendant is "entitled to have the case decided only upon the evidence that was introduced at the trial." *Commonwealth* v. *Stanley,* 363 Mass. 102, 104 (1973), quoting *Commonwealth* v. *Barker,* 311 Mass. 82, 88 (1942). See also *Sheppard* v. *Maxwell,* 384 U.S. 333 (1966); *Irvin* v. *Dowd, supra.* Similarly, a case should not be decided on less than all

proffered evidence. See Note, Due Process: The Deaf and the Blind as Jurors, 17 New Eng. L. Rev. 119, 126-127 (1981).

We believe that, in the circumstances of this case, the trial judge abused her discretion in denying the defendant's challenge for cause of a blind juror. The issue of identification was the predominant issue at trial. The jury were asked to view and to compare a drawing and photographic evidence, to compare the physical appearances of witnesses, and to compare the appearance of the defendant with his appearance in photographs and with a composite drawing. A mere description of the physical evidence would not have conveyed adequately the subtleties which would be apparent on a visual comparison.[3] Cf. *Jones* v. *New York City Transit Auth.*, 126 Misc. 2d 585, 588 (N.Y. Civ. Ct. 1984) ("when a significant portion of the evidence in a particular case is physical, the blind individual should clearly be excluded from serving as a juror"). Accord Note, *supra* at 145. "The presence of a juror [incapable of comparing the physical evidence] precludes a verdict by all jurors." *Commonwealth* v. *Brown, supra* at 436. A defendant is entitled to a unanimous verdict. Mass. R. Crim. P. 27, 378 Mass. 897 (1979).

Our holding is not contrary to the policy expressed in G. L. c. 234A, § 3, that physically handicapped persons should serve as jurors except where the court finds such service not feasible. We read § 3 as creating a presumption of competency which must then be evaluated on a case-by-case basis.[4] While G. L.

---

[3] The trial judge, the prosecutor, and defense counsel all assumed that the prospective juror was totally blind. The Commonwealth argues that defense counsel should have requested that the judge inquire as to the extent or nature of the juror's apparent visual impairment. We agree that generally voir dire should be conducted to ascertain the extent of a juror's visual impairment. Here, the defendant called the judge's attention to the fact that the prospective juror held a white cane and needed assistance to enter the jury box. He also specifically indicated that the issue to be tried was primarily that of identification requiring visual acuity by the jurors in the examination of physical evidence. The defendant adequately raised the issue, and failure to request a voir dire does not defeat his claim in these circumstances.

[4] A comparable provision in the precursor to G. L. c. 234A, § 3, prohibited the per se disqualification of blind persons as jurors. See G. L. c. 234, § 4, as amended through St. 1980, c. 177.

c. 234A, § 3, prohibits a visually impaired juror from being disqualified per se, we believe that G. L. c. 234, § 28, requires that the trial judge remove a juror when a defendant's right to a fair trial would be threatened by that juror's service.[5]

We conclude that the judge erred in refusing to excuse the juror for cause. As a result of the judge's error, the defendant expended one of his peremptory challenges. Later, when the defendant had exhausted his peremptory challenges, he was forced to accept a juror whom he otherwise would have challenged peremptorily.[6] The defendant is unlike the defendants in *Commonwealth* v. *Amazeen,* 375 Mass. 73, 83-84 (1978), and *Commonwealth* v. *Tropeano,* 364 Mass. 566, 567-568 (1974), who did not ultimately exhaust their peremptory challenges. "[T]he erroneous denial of the right to exercise a proper peremptory challenge is reversible error without a showing of prejudice." *Commonwealth* v. *Wood,* 389 Mass. 552, 564 (1983). The defendant suffered a prejudicial diminution of peremptory challenges warranting reversal and a new trial.

We address the defendant's argument concerning the written description which accompanied the composite drawing, because the issue is likely to recur at trial. The defendant cites *Commonwealth* v. *Weichell,* 390 Mass. 62, 68-73 (1983), cert. denied, 465 U.S. 1032 (1984), as authority for his contention that the written description should have been admitted. In *Weichell, supra,* we held that a composite drawing not shown to have been prepared under suggestive conditions is admissible as substantive evidence. We noted that statements which formed the basis of the drawing would be admissible as statements of an out-of-court identification by a witness who has made an in-court identification and is available for cross-exami-

---

[5] We note that some States which allow the sensorially impaired to serve as jurors explicitly provide for a challenge for cause where a party demonstrates that the prospective juror is unfit to serve in the particular case. See, e.g., Cal. Civ. Proc. Code §§ 198, 205(b), 602(2) (Deering Supp. 1985); Tex. Rev. Civ. Stat. Ann. art. 2133 (Vernon Supp. 1984); Tex. Code Crim. Proc. Ann. art. 35.16 (Vernon Supp. 1984).

[6] The defense counsel adequately preserved for the record that he would have exercised another peremptory challenge if one had been available.

nation. *Id.* at 72. See *Commonwealth* v. *Blaney,* 387 Mass. 628, 631-632 (1982); P.J. Liacos, Massachusetts Evidence 170-171 (5th ed. 1981). We reasoned that the composite drawing is admissible, since it "is no more than the sum of the parts perceived," i.e., the out-of-court identification. *Weichell, supra.*

Underlying our discussion in *Weichell* is the view that the out-of-court statements of identification, which logically supported the introduction of the composite drawing in evidence, would have been themselves admissible. In contrast, the description at issue here would not have been admissible, since no proper foundation was laid. At the time the offer of the composite was made, there was no evidence as to the source of the descriptive statement which accompanied it. Indeed, the evidence indicated that the written description as to "large teeth" came, not from the witness who participated in and testified as to the making of the composite, but from Marie Sweeney, who did not testify. Hence, the principles of *Weichell* which relate to descriptions and composites stemming from a witness who testifies at trial, subject to cross-examination, are inapplicable.[7] Cf. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 409 (1978).

The judgment is reversed, and the verdict is set aside. We remand the case for a new trial.

*So ordered.*

---

[7] We note that evidence as to the "large teeth" of the robber came before the jury later in the trial. Also, the defendant was allowed to display his teeth to the jury. Hence, even if the judge were in error on her original ruling (which she was not), there would be no prejudice shown. Since the composite drawing depicted no teeth, the statement that the robber had large teeth could be used as a prior inconsistent statement only if a foundation were laid to show that such a statement was made by the witness who participated in making the composite. See P.J. Liacos, Massachusetts Evidence 135-138 (5th ed. 1981). See also *Commonwealth* v. *Weichell, supra* at 85-86 (Liacos, J., dissenting).