Donald GALLOWAY, Plaintiff,

v.

The SUPERIOR COURT OF the
DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. No. 91–0644 (JHG).

United States District Court,
District of Columbia.

March 16, 1993.

Vicki G. Golden, Maloney & Burch, Washington, DC, for plaintiff.

William J. Earl, Asst. Corp. Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Individuals with disabilities ... have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, ... based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7) (1992). Declaring that he has been the subject of precisely this type of discrimination, plaintiff Donald Galloway ("plaintiff" or "Galloway") initiated this action, alleging that defendants' policy and practice of refusing to permit persons who are blind to serve on juries of the Superior Court of the District of Columbia ("Superior Court") violates the Rehabilitation Act of 1973 ("Rehabilitation Act"), *as amended*, 29 U.S.C. § 794, regulations implementing that law, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff subsequently filed a second amended complaint, which added a cause of action alleging a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

Presently pending are cross-motions for summary judgment, in which plaintiff seeks, *inter alia*, declaratory and injunctive relief. Specifically, Galloway asks that the Court declare the policy of excluding blind jurors from Superior Court juries discriminatory, and accordingly enjoin defendants from barring blind persons from participating in the jury pool. Defendant, on the other hand, continues to maintain that blind persons cannot be deemed "qualified" to perform the essential functions of a juror. After consideration of all of the pleadings and for the reasons stated below, plaintiff's motion is granted, and defendants' motion is denied.

## BACKGROUND

Plaintiff Galloway is a United States citizen, who lives in and is registered to vote in the District of Columbia. He is also blind and has been blind since the age of sixteen. Presently, he is employed as a Special Assistant and Manager by the District of Columbia Department of Housing and Community Development. Prior to attaining his current position, Galloway received both a Bachelors of Arts degree in sociology and a Masters of Arts in social work. After completing his education, he held a variety of research and supervisory positions in both the private and public sectors. For instance, early in his career, Galloway worked for the University of California, assisting the establishment of a prepaid health care program and health care centers. Later, Galloway served for three years as the Director of the Peace Corps for Jamaica, and then became assistant to the Deputy Director of the Peace Corps. In his current position with the District of Columbia government, as well as in his past positions, Galloway has had "to evaluate facts and people and to weigh evidence and make judgments based on this information."[1] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), Declaration of Donald Galloway ("Galloway Declaration"), at 4.

Like many registered voters in the District of Columbia, Galloway received a notice from the Superior Court indicating that he had been selected for jury duty. Accordingly, accompanied by his guide dog, he duly reported to Superior Court at 8:00 a.m. on the specified date, March 1, 1991. Although he

---

1. The sheer breadth and diversity of Galloway's work experience reflects these skills. After completing his masters degree, he traveled extensively in South America, researching the migration patterns of African Americans. Next, Galloway worked at the University of California in the health-care field. In 1973, he was named Director of the first peer counseling program for persons with disabilities at the Center for Independent Living in Berkeley, California. Three years later, Galloway was appointed the Colorado Director for the Governor's Council for the Handicapped. As Director, he was responsible for analyzing and formulating policy for individuals with disabilities concerning issues relevant to Colorado. In 1978, Galloway resigned from this position in order to accept a directorship in the Peace Corps. After spending five years with the Peace Corps, Galloway returned to work with the Center for Independent Living, however, this time with the District of Columbia office, and this time, as the Director of that program. Four years later, Galloway accepted his current position with the District of Columbia government.

attempted to register for the jury pool, Galloway was informed by Superior Court personnel that he was barred from serving as a juror because he is blind—the official policy of the Superior Court excludes all blind persons from jury service.[2]

## DISCUSSION

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* at 255, 106 S.Ct. at 2513–2514. At the same time, however, Rule 56 places a burden on the non-moving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

After careful consideration of the statutes invoked and the pleadings submitted, it is clear that defendants have violated the Rehabilitation Act, the ADA, and the Civil Rights Act of 1871 by implementing a policy that categorically excludes blind individuals from jury service.[3]

2. The statute addressing juror qualifications for the Superior Court states that:
   ... [A]ll qualified individuals shall have the opportunity to be considered for service on grand and petit juries in the District of Columbia and shall be obligated to serve as jurors when summoned for that purpose.
   D.C.Code § 11–1901 (1989). The statute adds, [a]n individual shall not be qualified to serve as a juror ... if determined to be incapable by

## A.  *The Rehabilitation Act*

Section 504 of the Rehabilitation Act provides that:

No otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a) (1988). "[T]he basic purpose of § 504 ... is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or ignorance of others." *School Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987). Accordingly, "mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). In promulgating the Rehabilitation Act, Congress was concerned not only with "archaic attitudes" held by the general populace, but also with archaic laws. *Arline,* 480 U.S. at 279, 107 S.Ct. at 1126–1127.

■ It is readily apparent that the Superior Court jury system falls within the purview of Section 504 of the Rehabilitation Act. First, the Act defines "program" as "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A) (1988 & Supp.1992). In addition, the Superior Court receives "Federal financial assistance" in the form of grants from the United States Department of Justice. Nor is there any question that a blind person is a "handicapped individual" within the meaning of the Act.

   reason of physical or mental infirmity of rendering satisfactory jury service....
   *Id.* § 11–1906(b)(2)(A).

3. At this time, the Court takes no position on the availability of compensatory damages. Nor will the Court consider the applicability of Eleventh Amendment immunity to the District of Columbia until this issue has been briefed by the parties.

■ Accordingly, the sole remaining issue is whether Galloway or any blind person is "otherwise qualified" to sit on a jury. Defendant bases its policy of excluding blind persons from jury service on the assertion that no blind person is ever "qualified" to serve as a juror because he or she is not able to assess adequately the veracity or credibility of witnesses or to view physical evidence and thus cannot participate in the fair administration of justice. Defendants' position is not only profoundly troubling, but clearly violates the Rehabilitation Act.

Without doubt, there exists "the tendency on the part of officialdom to overgeneralize about the handicapped." *Shirey v. Devine*, 670 F.2d 1188, 1204, n. 45 (D.C.Cir.1985). The policy at issue here is an excellent example of this penchant for overgeneralization. It is furthermore the reason why a court "must look behind the qualifications [invoked by defendants]. To do otherwise reduces the term 'otherwise qualified' and any arbitrary set of requirements to a tautology." *Pandazides v. Virginia Bd. of Educ.*, 946 F.2d 345, 349 (4th Cir.1991). Thus, two questions exist: What are the essential attributes of performing jury duty, and can Galloway or other blind persons meet these requirements?

Defendants' policy is based on the assumption that visual observation is an essential function or attribute of a juror's duties. In reaching this conclusion[4], however, defendants failed to examine any studies or review any literature on the ability of blind individuals to serve on juries or the ability of these individuals to assess credibility.[5] Even now, defendants only conclusorily contend that plaintiff "is not capable of performing all of the essential aspects of jury service."[6] Motion of Defendants for Summary Judgment ("Def. Motion"), at 5. However, plaintiff has offered uncontradicted testimony that blind individuals, like sighted jurors, weigh the content of the testimony given and examine speech patterns, intonation, and syntax in assessing credibility. Thus, "[t]he nervous tic or darting glance, the uneasy shifting or revealing gesture is almost always accompanied by auditory correlates[, including *inter alia,*] clearing the throat, pausing to swallow, voice quavering or inaudibility due to stress

---

4. The manner in which defendants decided not to permit blind jurors to serve is also disturbing. When questioned how the policy arose, the Clerk of the Superior Court, Frederick B. Beane, Jr. stated:

> Well, the policy came in to [sic] being because I had the question raised by the director of the Special Operations Division regarding service by blind jurors, and I at that time informed him that my policy was that we would not utilize blind jurors—blind persons to serve on the jury.

Deposition of Frederick B. Beane, Jr. ("Beane Dep."), at 5. He added that the decision
> was based on my previous experience in the court, and it may well have been influenced by some information that I had read over the years or have come to know about, but not with any specific document in mind.

*Id.* at 10–11. Indeed, this conclusion that blind jurors are not qualified appears based on exactly the archaic attitudes and unsubstantiated prejudices Congress wished to eradicate.

5. Defendants assert that the Court can draw conclusions regarding jury service without recourse to scientific studies or post-verdict polls. Defendants buttress this proposition by noting that the Court analyzes essential juror functions every time it conducts *voir dire*. The Court agrees and sees no reason why blind jurors cannot serve competently. That is to say, blind jurors can perform the essential juror functions in most instances. This conclusion is based in part on the fact that juries in this United States District Court for the District of Columbia routinely permit blind jurors to serve if they elect to do so, and if, after *voir dire*, the Court concludes that the juror is qualified for that particular trial. As illustration, there are trials that involve no documentary or physical evidence or the evidence is such that it can be readily described with a "word picture."

6. Defendants point to the standard jury instructions used in the Superior Court and in federal district courts to support their contention that observation is a fundamental tool in making credibility determinations. *See Standard Civil Jury Instructions for the District of Columbia*, § 3–1, p. 22 ("You *may* consider the demeanor and the behavior of the witness on the witness stand.") (emphasis added); 2 Devitt & Blackmar, *Federal Jury Practice and Instructions*, § 73.01 (3d ed. 1977) ("You *may* be guided by the appearance and conduct of the witness or by the character of the testimony given or by evidence to the contrary of the testimony given.") (emphasis added). However, defendants undercut their own position by citing an instruction used in federal district courts like this one where blind jurors are not automatically disqualified from jury service. Furthermore, neither instruction states that visual observation is wholly essential to credibility assessments.

or looking downward," Kaiser, *Juries, Blindness and the Juror Function*, 60 Chicago Kent Law Review 191, 200 (1984), and permits a blind juror to make credibility assessments just as the juror's sighted counterparts do.

Interestingly, at least ten states—Oklahoma, California, Virginia, Oregon, Texas, South Carolina, Washington, Massachusetts, Wisconsin, and New York—have enacted statutes that forbid the exclusion of blind persons from jury pools solely because of their disability.[7] Similarly, the United States District Court for the District of Columbia allows blind persons to serve as jurors, if they so elect. In many of these jurisdictions, visual impairment is not a *per se* disqualification, but may result in the exclusion of a blind individual from the jury pool if the case involves a significant amount of physical evidence or if the right to a fair trial is otherwise threatened by that juror's service. *See, e.g., Commonwealth v. Susi*, 394 Mass. 784, 477 N.E.2d 995 (1985); *Jones v. New York City Transit Auth.*, 126 Misc.2d 585, 483 N.Y.S.2d 623 (N.Y.Civ.Ct.1984).

Similarly, in the United States, there are several active judges who are blind. Indeed, it is highly persuasive that Judge David Norman, a blind person, served as a judge on the Superior Court of the District of Columbia and presided over numerous trials where he was the sole trier of fact and had to assess the credibility of the witnesses before him and evaluate the documentation and physical evidence. Defendants have never claimed that "those trials were invalid because [Judge Norman] was blind." Beane Dep., at 23. It is thus illogical to suggest that *all* blind persons are unqualified to sit on a jury when a blind judge in the same Superior Court successfully fulfilled those very duties a blind juror would have to discharge. No distinction can be drawn between a blind judge's ability to make factual findings and the abilities of a blind juror.[8]

In addition, the Superior Court admits persons who are deaf to jury panels and has never suggested that simply because they cannot hear, they cannot serve.[9] In fact, the Superior Court accommodates those individuals by providing sign language interpreters. Beane Dep. at 13, 24.[10] Yet, a deaf juror cannot hear a witness' words and cannot make credibility determinations based on inflection and intonation of voice, but still is able to make the requisite credibility determinations. Defendants obviously recognize deaf individuals' qualifications to serve on a Superior Court jury since no policy excluding deaf jurors exists. Applying the same logic to a blind individual demonstrates that although a blind juror cannot rely on sight, the individual can certainly hear the witness testify, hear the quaver in a voice, listen to the witness clear his or her throat, or analyze the pause between question and answer, then add these sensory impressions to the words spoken and assess the witness' credibility. Defendants' policy toward deaf jurors evidences a lack of prejudice towards those with hearing impairments and demonstrates their ability to look behind archaic stereotypes thrust upon disabled persons; it is thus difficult to fathom why the policy differs toward blind jurors.

Moreover, even if the individual does not initially appear to be "otherwise qualified," it must still be determined whether reasonable accommodation would make the individual otherwise qualified. *Alexan-*

---

7. Okla.Stat. tit. 38, § 28 (1991); Cal.Civ.Proc. Code § 198 (West 1991); Va.Code Ann. § 8.01–337 (1990); Tex.Gov't Code Ann. § 62.104 (1989); S.C.Code Ann. § 14–7–810 (1991); Wash.Rev.Code Ann. § 2.36.070 (1991); Mass. Gen.Laws Ann. ch. 234, § 4 (West 1991); Wis. stat. Ann. § 756.01 (West 1990); N.Y.Jud.Law § 510(3) (McKinney 1992).

8. The well-proven capabilities of blind lawyers, although not precisely parallel to those of every blind juror, are nonetheless persuasive. Blind lawyers have tried both civil and criminal cases before this Court and in doing so, they have utilized the same skills that a blind juror would need—they evaluate the credibility of witnesses and the content of physical and documentary evidence.

9. To add blind jurors of whatever number to Superior Court juries should neither strain the Court's bureaucracy nor severely impact upon its budgetary constraints.

10. It is interesting to note that Galloway's daughter, who is deaf, served on a jury in the Superior Court.

*der v. Choate,* 469 U.S. 287, 300–01, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661 (1985); *see Harris v. Thigpen,* 941 F.2d 1495, 1525 (11th Cir.1991). In the instant case, no accommodation was offered to Galloway or to any other blind person. According to Galloway he was turned away after being expressly informed that blind jurors could not be accommodated. Plaintiff's Motion, Galloway Declaration, at 2. Plaintiff has established that, in many instances, accommodation could indeed result in an "otherwise qualified" individual. As noted above, sign language interpreters are provided to deaf individuals serving on Superior Court juries. A similar service could be employed for blind jurors.[11] With this type of "reasonable accommodation," a blind juror such as plaintiff should be able to serve satisfactorily in most cases.

In addition to the evidence presented showing that visual observation is not necessarily an essential function of a juror, Galloway introduced substantial evidence to support his individual qualifications to serve competently on a jury. Plaintiff's educational and employment history underscores the fact that he can, and does, make credibility determinations daily. Galloway has served in a number of executive positions in the private sector, the federal government, and the state government and is presently responsibly employed by the District of Columbia, one of the defendants herein. In these capacities, Galloway has been called upon to evaluate facts, weigh evidence, and make judgments. He assesses credibility by listening carefully to the content and consistency of a person's speech and pays particular attention to auditory clues: the rhythm of a person's breathing and the sounds of a person moving, for example.

■ Yet, just as no *per se* rule of exclusion should be employed against blind persons who wish to serve as jurors, no *per se* rule of inclusion should apply either. Plaintiff has never argued that he should be permitted to participate in every trial. Rather, he has consistently conceded that there may be cases in which it would be inappropriate for a blind person to serve as a juror—cases in which there is a substantial amount of documentary evidence, for example—and that the decision as to whether he should be empaneled in any particular case should be left to the Judge, the attorneys, and the *voir dire* process. In many cases, a blind juror can certainly provide competent jury service.[12]

## B. *The Americans with Disabilities Act*

■ It is equally obvious that the Superior Court jury system falls within the parameters of the ADA. Title II of the ADA, which

---

11. An organization called "Metropolitan Washington Ear, Inc." employs "audio describers"—individuals, trained to describe physical movements, dress, and physical settings for the blind. This or a similar service could be utilized in the Superior Court or the attorneys could be reminded to take special care in questioning witnesses to ensure accurate and complete descriptions of exhibits or diagrams. Moreover, if necessary, documentary evidence could be read to a blind juror by a sighted person and physical evidence could be described. In fact, the Library of Congress utilizes a device called a Kurzweil Reading Machine, which translates printed material into audio. Nevertheless, these suggestions are just that, suggestions—because no accommodation was offered to Galloway, the Court takes no position on the reasonableness of any particular accommodation other than to note that solutions are as limitless as a willing imagination can conceive.

12. Whether a blind juror can serve competently can be addressed on a case-by-case basis. During *voir dire,* jurors routinely inform the court of physical ailments or disabilities, temporary or otherwise, which could impede their ability to serve during that trial. In these instances, the judge determines, on an individual basis after inquiry, whether that juror can serve on that particular case. This routine process occurs every day in every court. Members of the *venire* often advance a variety of reasons which may impact upon their ability to serve, including: requiring both smoking and non-smoking areas, needing to take medication at regular hours, taking medication which induces drowsiness, requiring frequent and regular recesses, having dietary requirements which cannot be satisfied by food available in the court cafeteria, and the inability to sit beyond certain hours due to child care, transportation and carpool constraints. These needs and constraints are addressed in the regular course of choosing a jury and may in some instances result in a determination that a juror cannot be accepted because either the flow of trial would be irreparably injured or a fair trial might not result. It is no different if there is a blind person in the *venire.* That person can be individually questioned to ascertain his or her abilities *vis-a-vis* that particular trial.

became effective on January 26, 1992,[13] provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1992). The Superior Court and the District of Columbia are public entities within the meaning of the Act; "public entity" is defined as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131(1). It is also evident that pursuant to the terms of the ADA, a blind person is an "individual with a disability."

Here, too, the question under the ADA turns on an individual's qualification to sit on a jury. And once again, defendants' policy that all blind persons cannot not serve on any Superior Court jury is unavailing. For substantially the same reasons as earlier set forth, the Court finds that blindness alone, does not disqualify an individual from serving on many juries.[14] Moreover, with reasonable accommodation, the number of cases for which a blind person could be chosen increases even further. Consequently, the policy of categorical exclusion of all blind persons from Superior Court juries violates the ADA.

## C. *42 U.S.C. § 1983*

■ Plaintiff states a cognizable claim under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

*Id.* It is well settled that the District of Columbia is a person for purposes of the statute and is subject to liability when illegal acts committed are the result of official policy. *See Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). It is also undisputed that the decision to exclude all blind persons from jury service and the decision to reject Galloway from jury service on March 1, 1991 were the result of an official policy of the Superior Court of the District of Columbia.

■ The last and often most critical element of section 1983 liability requires deprivation of a federal right, secured under the laws of the United States or the Constitution. The Rehabilitation Act and the ADA have each been violated by the defendants' policy.[15] The policy of excluding all blind persons from Superior Court juries in the District of Columbia in violation of the Rehabilitation Act and the ADA also violates the Civil Rights Act of 1871.

## CONCLUSION

■ As the Supreme Court noted in *Powers v. Ohio:*

> Jury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all the people.... It "affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for the law." ... Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their

---

13. On April 28, 1992, another blind District of Columbia resident was told not to appear for jury service in the Superior Court despite having earlier received a summons. Plaintiff's Motion, Declaration of Artis McMorris, at 2.

14. *See supra,* pp. 6–13.

15. In light of this decision, the Court need not reach the question whether plaintiff has established a violation of equal protection under the Fifth Amendment.

most significant opportunity to participate in the democratic process.

— U.S. ——, ——, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (1991) (citations omitted). Thus, "the honor and privilege of jury duty" *id.*, may not be abridged simply because an individual is blind. The Rehabilitation Act and the ADA were enacted to prevent old-fashioned and unfounded prejudices against disabled persons from interfering with those individuals' rights to enjoy the same privileges and duties afforded to all United States citizens.

The policies of the Superior Court of the District of Columbia are inherently self-contradictory. They allow a deaf person to serve as a juror and provide accommodation to those deaf individuals who need it. At the same time, they categorically exclude blind persons without even considering or offering accommodation. Defendants' rationale for this distinction is irrational and cannot withstand scrutiny.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment is granted; it is

FURTHER ORDERED that defendants' motion for summary judgment is denied; it is

FURTHER DECLARED that the policy of the Superior Court of the District of Columbia of categorically excluding blind individuals from jury service is a violation of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the Civil Rights Act of 1871; it is

FURTHER ORDERED that the Superior Court of the District of Columbia, and all acting on its behalf, are enjoined from categorically excluding blind persons from jury service in the Superior Court of the District of Columbia; it is

FURTHER ORDERED because several issues remain outstanding, a briefing schedule is established in order to resolve these issues. Commencement of this schedule is delayed temporarily to afford the parties an opportunity to arbitrate these matters.[16]

Should the case not resolve, then motions addressing the availability and amount of damages sought, the right to a jury determination of damages, and the applicability of the Eleventh Amendment are due on or before April 30, 1993. Oppositions must be filed by May 21, 1993. Replies, if any, must be submitted on or before June 2, 1993.

IT IS SO ORDERED.

---

16. The Court has, in the past, encouraged resolution of this case by granting substantial opportunities and time to the parties; regrettably the matter continued. But, the Court is optimistic that the remaining issues are amenable to full resolution without further litigation.