# Personal Satisfaction of Immigration and Nationality Act Oath Requirement

Section 504 of the Rehabilitation Act does not require accommodation for persons unable to form the mental intent necessary to take the naturalization oath of allegiance prescribed by section 337 of the Immigration and Nationality Act.

The oath requirement of section 337 may not be fulfilled by a guardian or other legal proxy.

April 18, 1997

LETTER OPINION FOR THE GENERAL COUNSEL
IMMIGRATION AND NATURALIZATION SERVICE

You have requested advice concerning whether section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1994), requires some sort of accommodation for persons who are unable to form the mental intent necessary to take the naturalization oath of allegiance prescribed by section 337 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1448 (1994). Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from David A. Martin, General Counsel, Immigration and Naturalization Service (Feb. 10, 1997). More specifically, your memorandum of February 10 asks us to consider the question whether, in the case of a person who cannot form the requisite intent, the oath requirement might be fulfilled by a guardian or other legal proxy. *Id.*

As we recently advised you, it is our conclusion that the oath requirement of section 337 may not be satisfied by a guardian or legal proxy. This letter briefly sets forth the reasoning underlying that conclusion.

Section 504 of the Rehabilitation Act prohibits discrimination against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability" in "any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). This Office has previously advised that all INS activities and programs constitute "program[s] or activit[ies] conducted by an Executive agency," *see* Memorandum for Maurice C. Inman, Jr., General Counsel, Immigration and Naturalization Service, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Section 504 of the Rehabilitation Act of 1973* (Feb. 2, 1983). The INS must therefore comply with the requirements of section 504 in the implementation and operation of its naturalization program.

The critical question presented by your memorandum is whether an individual who cannot personally satisfy the oath requirement for naturalization because he or she lacks the ability to form the mental intent sufficient to take an oath can be considered "otherwise qualified" for naturalization; if so, section 504 would

require the INS to provide for the naturalization of that individual.[1] Department of Justice regulations define a "qualified handicapped person," in the context of a program or activity "under which a person is required to . . . achieve a level of accomplishment," as "a handicapped person who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the agency can demonstrate would result in a fundamental alteration in its nature." 28 C.F.R. § 39.103 (1996). In other words, an individual would be "otherwise qualified" for a program if he or she could meet the essential eligibility requirements of that program, either without any modification at all, or with "reasonable" modifications. A particular program modification or accommodation is "reasonable," and therefore required under section 504, only if an examination of the basic nature or purpose of the program reveals that the requirement in question is not "fundamental" or "essential" to the accomplishment of that purpose. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987) (accommodation is "reasonable" if it does not "require[ ] 'a fundamental alteration in the nature of [the] program' " or does not "impose[ ] 'undue financial and administrative burdens' ") (alteration in original) (citations omitted).

Case law makes clear that, where a program requirement is found to be essential to the program, section 504 does not mandate an accommodation that would alter or eliminate that requirement. *Compare, e.g., Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131 (2d Cir. 1995) (school board not required to accommodate disabled teacher who could not manage classroom alone if ability to manage classroom alone was essential function of job); *Bradley v. University of Texas M.D. Anderson Cancer Ctr.*, 3 F.3d 922 (5th Cir. 1993) (hospital not required to accommodate HIV-positive surgical technician where essential function of technician's job was to be present at and assist in the operative field), *cert. denied*, 510 U.S. 1119 (1994); and *Gilbert v. Frank*, 949 F.2d 637 (2d Cir. 1991) (postal service not required to accommodate disabled man who sought postal clerk position, where accommodation required waiver of essential functions of lifting and handling 70-pound mail bags) *with Strathie v. Department of Transp.*, 716 F.2d 227 (3d Cir. 1983) (where essential nature of school bus driver licensing program was to prevent only appreciable safety risks, rather than all potential safety risks, state must accommodate individual bus drivers who wear hearing aids); *Galloway v. Superior Court*, 816 F. Supp. 12 (D.D.C. 1993) (where visual observation was not essential function or attribute of juror's duties, state court required to accommodate blind individuals in juror program); and *Wallace v. Veterans Admin.*, 683 F. Supp. 758 (D. Kan. 1988) (where it was not essential to registered nurse program that each and every registered nurse administer narcotic injections, hos-

---

[1] We note by way of clarification that we are concerned here solely with whether an individual must be able to form and manifest mental intent in order to satisfy the oath requirement of section 337 We do not attempt to address the particulars of how or when that intent may be manifested in the naturalization process.

pital must accommodate registered nurse who was recovering from chemical dependency). The accommodation you have suggested — that a guardian or other legal proxy satisfy the oath requirement of section 337 on behalf of an individual who cannot form the requisite mental intent — would thus be considered "reasonable" under section 504 only if personal satisfaction of the oath requirement is not essential to naturalization.

An analysis of the statutory scheme that Congress has established for naturalization, and the function of the oath of allegiance within that process, convinces us that personal satisfaction of the oath requirement is essential to naturalization. At its core, naturalization concerns the establishment of a relationship between the individual and the state. *See generally* T. Alexander Aleinikoff, *Citizens, Aliens, Membership and the Constitution*, 7 Const. Commentary 9 (1990). In defining the prerequisites for this relationship, Congress always has required some form of an oath of allegiance. *See, e.g.*, Act of March 26, 1790, 1 Stat. 103; *see also* Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, 4 *Immigration Law and Procedure* § 96.05[1] (1996) ("Gordon, Mailman & Yale-Loehr"). The naturalization oath set forth in the INA simultaneously affirms an individual's intent to become a U.S. citizen and to renounce "all allegiance and fidelity to any foreign prince, potentate, state or sovereignty," 8 U.S.C. § 1448(a), as well as his or her willingness to assume all the duties of citizenship required by the United States. By including this oath requirement and mandating strict compliance therewith, *see* 8 U.S.C. § 1421(d) (1994) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."), Congress has made individual volition, as manifested through the oath of allegiance, fundamental to naturalization. *See* Gordon, Mailman & Yale-Loehr § 91.02[1] (in contrast to citizenship at birth, which is acquired automatically, naturalization involves individual volition).

That Congress considers the oath requirement central to the naturalization process is underscored by the fact that Congress has crafted various statutory accommodations of the oath requirement for persons with disabilities, but has stopped short of exempting such persons from the oath requirement altogether.[2]

---

[2] We are not persuaded to reach a different conclusion simply because Congress excepted from the oath requirement one narrow class of persons — namely, children born abroad whose one U.S citizen parent petitions for naturalization on their behalf pursuant to section 322 of the INA and who are unable to understand the meaning of the oath. *See* 8 U.S.C. § 1448(a) This narrow statutory exception must be seen in the context of the unique treatment of children of U S citizens in the citizenship process and Congress's 1940 expansion of the oath requirement to certain children. Prior to 1940, Congress had granted automatic derivative citizenship to children born abroad of one U.S. citizen parent, without requiring them to live in the U.S at any time or to otherwise demonstrate their allegiance to the United States. However, in 1940, Congress for the first time required such children to demonstrate their allegiance to the United States Recognizing that some children might not be able to take an oath of allegiance, *see To Revise and Codify the Nationality Laws of the United States into a Comprehensive Nationality Code: Hearings on H.R 5678 Before the House Comm on Immigration and Naturalization*, 76th Cong. 395 (1940), Congress included an exemption for such cases. *See* Pub L. No. 76–853, § 335(a), 54 Stat. 1137, 1157 (1940) (permitting waiver of the oath "if in the opinion of the [naturalization] court the child is too young to understand its meaning"); Pub L No 82–414, § 337(a), 66 Stat 163, 259 (1952) (permitting waiver of the oath "if in the opinion of the [naturalization] court the child is unable to understand its meaning"). Thus, in creating the § 1448(a) exemption,

*See* 8 U.S.C. § 1448(c) (providing for expedited judicial oath administration cere-
mony for persons with "developmental disability"); 8 U.S.C. § 1445(e) (1994)
(Attorney General may provide for administration of oath of allegiance other than
in public ceremony if person has disability that "is of a permanent nature and
is sufficiently serious to prevent the person's personal appearance" or "is of a
nature which so incapacitates the person as to prevent him from personally
appearing").

We therefore find that, under the existing statutory scheme established by Con-
gress, personal satisfaction of the oath requirement by each individual applicant
is "essential" to naturalization and that permitting a legal guardian to fulfill that
requirement on behalf of an individual whose disability precludes formation of
the mental intent necessary to take the oath would not be a reasonable accommo-
dation under section 504.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

Congress was tailoring its expansion of the oath requirement rather than creating a general exemption to a long-
standing requirement