860 F.Supp. 1186 (1994)
Mary DEES, Individually and on behalf of those similarly situated, Plaintiff,
v.
AUSTIN TRAVIS COUNTY MENTAL HEALTH AND MENTAL RETARDATION, Defendant.
No. A 93 CA 525 SS.
United States District Court, W.D. Texas, Austin Division.
June 16, 1994.
On Motion for New Trial and for Clarification July 29, 1994.
*1187 James C. Harrington, Texas Civ. Rights Project; Virginia Raymond; and Beth L. Mitchell, Advocacy, Inc., Austin, TX, for plaintiff.
Thomas H. Watkins, Hilgers & Watkins, Austin, TX, for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
SPARKS, District Judge.
The plaintiff, Mary Dees, on behalf of herself and others similarly situated, asserts that the defendant, Austin Travis County Mental Health and Mental Retardation, is in violation of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101-12213 (West Pamph.1993) ("ADA"), for holding board of trustees meetings at a time inaccessible to those suffering from certain types of mental illnesses. Dees seeks injunctive relief and attorney's fees.
This cause was tried before the Court, without a jury, on June 10, 1993. All parties were present and represented by counsel. Having carefully considered the evidence presented at trial, the arguments of counsel, and the briefing in this cause, the Court enters the following findings of fact and conclusions of law.

I. FINDINGS OF FACT
Austin Travis County Mental Health and Mental Retardation (ATCMHMR) Center is a community center established pursuant to Texas law that provides mental health and mental retardation services to the residents of Travis County, Texas. See Tex. Health & Safety Code Ann. § 534.001 (West 1992 and Supp.1994). The ATCMHMR board of trustees is charged with administering the center and establishing policies consistent with the purpose of the center, which is to be a "vital component in a continuum of services for persons in this state who are mentally ill or mentally retarded." § 534.008 (West 1992), § 534.0015 (Supp.1994).
The ATCMHMR board is a voluntary board composed of nine members. Four of the members are appointed by the Austin City Council, four are appointed by the Travis County Commissioners, and one is appointed by the Austin Independent School District. Each board member is required to participate on one or more of the four standing committees of the board  executive, finance and control, planning and operations, and personnel. The board holds regular meeting the fourth Thursday of each month at 8:00 a.m., and committees meetings once a month at noon or a later time.
Mary Dees has mental illness and has been diagnosed as suffering from borderline personality disorder, post-traumatic stress disorder, major depressive disorder with psychotic features, and anxiety disorder. Because of her mental illness, Dees takes prescribed psychotropic medications, some of which have a sedative side effect. Because of the sedative side effect, Dees's ability to function, particularly in the morning hours before 10:00 a.m., is limited. Although Dees and her psychiatrist have made efforts to alter her medication, the time it is taken, and its dosage, none of these efforts has been successful in meeting the dual purpose of controlling her illness and alleviating the sedative side effect. Dees is unable to work full-time because of her illness and the effects of her medications. She is, however, active in the community as an advocate for the rights of the mentally ill and participates in the activities of community organizations.
In the mid to late 1970s, the ATCMHMR board held its regular monthly meetings at noon. Sometime before 1988, the meeting time was changed to 7:00 a.m. Dees attended a couple of the 7:00 a.m. meetings but had difficulty getting up and ready to attend, driving to the meetings, and communicating and comprehending the proceedings once she arrived. She subsequently requested that *1188 the board change the meeting time to later in the morning or day so that she, and others like her that suffer drowsiness from the effects of medication for mental illness, could attend the meetings.
The record reflects that from January through June 1993, Dees and several mental health and mental illness organizations representing the consumers of ATCMHMR contacted the board regarding rescheduling the monthly board meetings. See Plaintiff's Exhs. 12, 13, 15, 17. Although, from the record before the Court, there does not appear to be a consensus on the best time for the meeting, all who contacted the board felt the 7:00 a.m. time was too early.
On April 13, 1993, Advocacy, Inc., on behalf of mental health consumers, sent a letter informing the board that if efforts to solve the issue were not made and a firm commitment from the board to correct the problem was not received, legal action would ensue. See Plaintiff's Exh. 21. The concern raised by community members about the 7:00 a.m. time was discussed by the board in its May 1993 meeting, and the board's chairperson, Patricia Tweedy, informed Advocacy, Inc. that the Board had begun a process for addressing the board meeting time concerns and invited an Advocacy, Inc. representative to participate in the process over a period of several months. See Defendant's Exh. 3. Tweedy indicated the process would start with the planning and operations committee meeting on June 21, 1993. Id.
At the June 21, 1993 planning and operations committee meeting, the committee heard discussion from community members regarding the meeting time and, as a result, unanimously agreed to hold its committee meetings at 11:30 a.m. instead of 7:30 a.m. See Plaintiff's Exh. 4. There are no meeting minutes in the record reflecting the proceedings and discussion during the July and August regular board meetings. However, correspondence from Travis County Judge Bill Aleshire to the board states his disappointment that the board had not voted in its July meeting to change the monthly meetings from 7:00 a.m. to a later time. See Plaintiff's Exh. 16. The minutes of the August 20, 1993 planning and operations committee meeting reflect the three members of that committee voted unanimously to recommend that the board hold its regular meetings at 11:30 a.m. or noon. See Plaintiff's Exh. 5.
On July 29, 1993, Dees filed suit in state court. The defendant removed the cause to federal court on August 27, 1993. Sometime in August, evidently between the August 20, 1993 planning and operations committee meeting and the remand to federal court, the board voted to change its meeting time to 8:00 a.m.[1] and made the following additional accommodations to address Dees's complaint: provided an opportunity for public input after 9 a.m. in board meetings; scheduled routine items first at meetings and "programmatic issues" later in the agenda; provided for rescheduling, if possible, of the agenda order upon request by an interested party; provided for special "town-hall meetings" quarterly at rotating time and place; and provided for videotaping of the town-hall meetings and loaning the tape free to public. In addition, consistent with the planning and operations committee's earlier action, the board stated that all committee meetings would be held no earlier than noon.[2] Tweedy testified that because committee meetings are less formal and are where items are examined and discussed in detail, individuals can participate more actively than in regular meetings, where input is limited.
Tweedy testified, in making the accommodations, the board considered the needs of numerous public constituencies, as well as those of the board members, the ATCMHMR staff, and the clients. She testified *1189 that most groups with whom the board works were happy with the accommodations, although many would still have preferred a meeting time in the afternoon. See also Defendant's Exh. 1 ("pat on back" letter dated September 23, 1993 from Judge Aleshire for changing board meeting time to 8:00 a.m.). Tweedy testified further that the accommodations had not created a significant change in the number of consumers or interested members of the public participating in the board's activities.
Several witnesses, including Dees, testified the accommodations were insufficient to address Dees's primary concern, an opportunity to observe and have input during the board's decisionmaking process. Guadalupe Perez, a current board member, testified that although attendance at committee meetings was valuable, attendance at board meetings had greater value because those meetings were the ones in which final decisions were made. Judy Benton, the coordinator of ATCMHMR's drop-in center, testified she has bipolar disorder requiring medications that have the side effect of drowsiness in the morning. Although she has attended the evening "town-hall" meetings, Benton testified she has not attended the morning board meetings because it is too difficult to get up and to the meeting while under the sedative side effect of her medication. She stated further she believed the modifications made by the board were good alternatives but did not remedy the problem of allowing those who use ATCMHMR's services to see how decisions are made. Benton asserted she would attend the regular board meetings if they were held later.
Dees testified she did not believe the modifications were sufficient because they did not allow an interested party to participate in the activities of the board. The full board does not attend "town-hall" meetings and no decisionmaking or voting is done in the meetings.[3] Scheduling the public comment period in regular meetings after 9:00 a.m. places the person coming in late in the disadvantageous position of not knowing what has transpired and places their comments out of context. Additionally, Dees testified that after 9:00 a.m., in her experience, only a few board members were left at the meeting. For these reasons, Dees pursued the lawsuit now before this Court.

II. CONCLUSIONS OF LAW
Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." ADA § 12132. ATCMHMR is a public entity as defined by the statute. § 12131(1)(B); see also Galloway v. Superior Ct. of Dist. of Columbia, 816 F.Supp. 12, 15 (D.D.C.1993) (program, as defined by the Rehabilitation Act, encompasses all operations of instrumentality of state or local government).[4]
Dees has been diagnosed with mental illness and is limited in a major life activity in that her ability to work is limited by the side effects of her medication. 28 C.F.R. pt. 35, app. A, at 445-446 (1993); see also Guice-Mills v. Derwinski, 967 F.2d 794, 797 (2nd Cir.1992). Accordingly, Dees has proved by a preponderance of the evidence she is disabled as that term is used in the ADA.[5] Further, Dees is a qualified individual with a disability under the ADA because she meets the essential eligibility requirements for receipt of ATCMHMR's services, programs, or activities. ADA § 12131(2); 28 C.F.R. pt. *1190 35, app. A, at 448. Dees has also proved by a preponderance of the evidence that the policy of holding regular board meetings at 7:00 a.m. discriminated against Dees, and those who like her have early morning sedative side effects from medication, by excluding them from participation in ATCMHMR public meetings.[6] Further, Dees had proved by a preponderance of the evidence that the modifications ATCMHMR has offered in lieu of full attendance at the board meetings are not sufficient to afford Dees and others like her full participation in the board meetings.
However, under the ADA, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modification would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7) (emphasis added).[7] ATCMHMR asserts that it has made reasonable modifications to accommodate Dees's needs, as well as those of other interested groups, and changing the time of the regular board meetings to 9:00 a.m. or later would fundamentally alter the nature of the board because it is comprised of volunteers with other commitments. ATCMHMR contends the ultimate effect would be a negative effect on the diversity of the board. Accordingly, ATCMHMR asserts that making further changes in the time would not be a reasonable modification.
The burden was on ATCMHMR to establish, by a preponderance of the evidence, that changing the board meeting time from the current time of 8:00 a.m. to 9:00 a.m. or later would cause an undue burden or fundamentally alter the nature of the board. Id.; see also Prewitt v. United States Postal Service, 662 F.2d 292, 308 (5th Cir. Unit A 1981). ATCMHMR has failed to meet this burden.
There is no evidence in the record that the board composition would be fundamentally altered or its diversity affected by changing the board meeting time to 9:00 a.m. or later. Kay Lambert testified that when she was on the board and meetings were held at noon, there was no problem getting talented people on the board and, in fact, the process was quite competitive. Guadalupe Perez, a current board member, testified he had heard only one board member mention the possibility of resigning if the time were changed; it was Perez's opinion a time change would not affect the composition of the board.
The evidence reflected that of fifty-three other voluntary boards in the Austin-Travis County area, only two meet before 9:00 a.m.  the ATCMHMR board, which meets at 8:00 a.m., and the Austin City Commission Retirement board, which meets at 8:30 a.m. Further, there is no evidence in the record *1191 that the composition of the board, which currently is comprised primarily of retirees and federal and state employees, would be affected by a time change. Additionally, the record reflects that no members of the current board have resigned despite having to attend committee meetings at noon, evening meetings, and occasional afternoon meetings. Accordingly, the court finds no evidence in the record the diversity of the board would be affected by the requested time change.
Additionally, ATCMHMR had failed to prove that changing the time would create an undue administrative or financial burden.[8] In fact, the only evidence before this Court that a time change would have any negative effect on the board was Tweedy's testimony in response to the Court's questioning that she would have to reconsider her membership on the board if the time were changed. There is absolutely no evidence before the Court that any board member would unequivocally resign.
Although ATCMHMR has suggested that moving the time to afternoon will work to discriminate against those with disabilities who have difficulty functioning in the afternoon, there is little evidence before the Court to support the assertion.[9] Additionally, ATCMHMR has failed to show why a time of 9:00 or 10:00 a.m., which is within the range requested by Dees, would not address this concern. Additionally, the record does not reflect that any consumer group requested the time the board selected, 8:00 a.m. In fact the evidence is to the contrary  that mental health groups as whole requested times later in the day.
ATCMHMR has proved it attempted to accommodate the desires of a number of interested groups, some of which have competing needs. And the Court is sympathetic to its assertion that no one time will fit the needs of all interested parties. However, the fundamental purpose of the ADA is to integrate the disabled into mainstream activities for "[p]rovision of segregated accommodations and services relegates persons with disabilities to second-class status." 28 C.F.R. pt. 35, app. A, at 451. Accordingly, the standard Congress has determined that should be applied in assessing the reasonableness of modifications under the ADA is not a balancing test of competing interests, as ATCMHMR seems to argue, but whether the modification can be made without fundamental alteration or undue burden such that disabled individuals will not be denied the equal opportunities enjoyed by others. Although there may have been evidence available to meet this standard, it was not presented to this Court.
Accordingly, the Court finds the ATCMHMR has failed to prove, by a preponderance of the evidence, that modifying the meeting time to a later time would fundamentally alter the board and the services it provides or be an undue financial or administrative burden. Therefore, the Court finds that moving the board meeting to 9:00 a.m. or later is a reasonable accommodation, under the ADA, to avoid discrimination against individuals with mental disabilities.
To the extent any finding of fact is a conclusion of law or any conclusions of law is a finding of fact, it should be considered as such.

III. CONCLUSION
The Court believes that Dees and Advocacy, Inc. had good intentions in bringing this suit and notes that they made repeated efforts to settle the suit over a period of months. Additionally, the Court has noted that Dees's initial complaints fell on deaf ears; not until the demand letter was sent did the board begin to take any action. *1192 However, the Court cannot help but be disappointed over the necessity for judicial intervention in a matter such as this and can only hope that the result does not work to create additional litigation by others with different disabilities. When the Court is presented with litigation between two parties that should be on the same side and working toward the same goals instead of against each other, the Court cannot help but feel concern.
In particular, the Court has concerns that abuses of the ADA by over-zealous advocates may have the ironic effect of harming the interests of those it was designed to protect. If well-qualified and dedicated community members who wish to actively participate as volunteers in community services must suffer fear of legal reprisal for their well-intended efforts, their willingness to participate and the resulting benefit of their skills and efforts may well be lost. Accordingly, the Court hopes those who the ADA is designed to assist and protect exercise good judgment and common sense in invoking its remedies.
As a prevailing party, Dees is entitled to recover reasonable attorney's fees and costs. An application for these fees and costs should be filed with the Court with supporting affidavits and a brief discussing the applicable Johnson factors. With regard to the attorney's fees issue, the parties and their counsel are encouraged to use "their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees. Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial award for attorney's fees." Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir.1974).
Based on its findings of facts and conclusions of law, the Court enters the following order:
IT IS ORDERED that ATCMHMR board meetings be held at a time chosen by the board between 9:30 a.m. and 6:00 p.m. for a trial period of six months. IT IS FURTHER ORDERED that on or before December 15, 1994, the parties are to file pleadings with the Court specifying their evaluations of the trial period and their request, if any, for further hearings or relief.

ON MOTION FOR NEW TRIAL AND FOR CLARIFICATION
On July 28, 1994, the Court held a hearing on the defendant's Motion for New Trial and Amendment of Judgment[1] and Motion for Clarification. Having considered the parties' briefing and the arguments of counsel, the Court enters the following orders.
In its motion for new trial, the defendant requests the court to reconsider its June 15, 1994 Findings of Fact and Conclusions of Law and find for the defendant on the basis that the plaintiff was provided meaningful access for input to the ATCMHMR Board of Trustees. The defendant contends the Court erred in deciding whether moving the meeting time was a reasonable modification "without addressing the initial question of whether the Plaintiff has `meaningful' access for input to the Board." Def.Motion for New Trial, at 1. In its supplemental letter brief, the defendant contends that compliance with the ADA should be a two-part test, with the initial determination of reasonableness hinging upon the balancing of competing interests to determine if meaningful access has been provided. Only if "meaningful access" is not provided would a court be require to determine if a fundamental alteration would result from the requested modification. McClendon letter, July 18, 1994.
The regulations interpreting the ADA require a public entity to "make reasonable modifications in policies, practices, or procedure when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."[2] 28 C.F.R. § 35.130(b)(7). Further, *1193 the purpose of the ADA is to integrate individuals with disabilities into mainstream society. Even in the limited circumstances in which separate programs are permitted,
individuals with disabilities cannot be denied the opportunity to participate in programs that are not separate or different. This is an overarching principle of the [ADA]. Separate, special, or different programs that are designed to provide a benefit to persons with disabilities cannot be used to restrict the participation of persons with disabilities in general, integrated activities.
28 C.F.R. pt. 35, app. A at 452.
Under the defendant's construction of the ADA, because the defendant perceives it has given the plaintiff "meaningful access" for input to the board by other avenues, changing the time to accommodate consumers of ATCMHMR that, like Dees, suffer sedative effects of medication in the early morning, is, by implication, not a reasonable accommodation. If the Court accepts the defendant's assertion of the analysis necessary to determine the reasonableness of an accommodation, as long as an entity had provided "meaningful access" to an entity's programs, services, or activities, the disabled individual need not be integrated into the actual program, services, or activity at issue. This analysis would defeat the entire purpose of the ADA. Further, the Court found that modifications offered by ATCMHMR in lieu of full attendance at the board meeting were not sufficient to afford Dees and others like her full participation in the board meetings.[3]
The defendants assert that "a balance [must] be struck between the modification requested and the integrity of the program." Def. Motion for New Trial, at 5. The Court does not disagree with this assertion and, in fact, finds it consistent with the ADA. Whether a party chooses to define the balance as involving the integrity of the program or involving a fundamental alteration in the nature of the service, program, or activity makes no difference in the Court's analysis. Despite the defendants assertion to the contrary, it failed to prove by a preponderance of the evidence that the reasonable accommodation requested by Dees would affect the integrity of the program, would cause a fundamental alteration in the ATCMHMR board or the services it provides, or would create any kind of administrative hardship or burden.
The defendant, in its supplemental brief suggests that, under the Court's reasoning, any modification requested by Dees or any other plaintiff must be analyzed to determine if it causes a fundamental alteration, despite its reasonableness. McClendon letter, at 1-2. To make its point, the defendant argues if Dees had requested a time between 2:00 a.m. and 5:00 a.m., the Court would "skip right past the question of whether or not this accommodation is reasonable and go straight to the test of whether or not meeting between 2:00 a.m. and 5:00 a.m. will fundamentally alter the board." McClendon letter, at 2. The Court believes this example speaks directly to the purpose of the word "reasonable" in the statute. Such a request, in this Court's view, would neither be reasonable nor require further analysis.[4] Dees was not unreasonable with her requested time change and, in fact, offered a range of reasonable times as options that would afford her access to the board meetings. The defendants did not prove that the reasonable time change requested by Dees would fundamentally alter the board or any of the services or programs offered by ATCMHMR or create an administrative burden.[5]
*1194 With regard to the Motion for Clarification, the issue before the Court at trial was the time of the regularly scheduled Board meetings and that is the issue upon which the Court ruled. The Court ruled the regular board meeting must be held between 9:30 a.m. and 6:00 p.m. The only clarification the Court deems necessary is that a regular board meeting may extend beyond 6:00 p.m. The issue of the time of emergency meetings, committee meetings, and executive meetings was not before the Court. The scheduling of these meetings remains at the Board's discretion.[6]
As to the finality of the order, the Court purposely assigned a trial period of six months because the Court had concerns about potential effects of the required time change. While the defendant did not meet its burden of proof under the ADA, the Court believes it to be in the best interest of all the consumers of ATCMHMR to have a supportive board and a well-functioning system. Therefore, the Court wanted to provide the parties with an opportunity to evaluate the effectiveness of the remedy and to seek modifications or further relief, if necessary. However, the Court is not adverse to entering a final judgment in the cause if that is the desire of the parties or to certify the cause for interlocutory appeal. At the hearing, the parties indicated they wished to continue the trial period. Therefore, the trial period will remain in effect as ordered by the Court.
Accordingly, IT IS ORDERED the defendant's Motion for New Trial is DENIED;
IT IS ORDERED that the defendant's Motion for Clarification is GRANTED as set forth in this order;
IT IS ORDERED that the Court's June 15, 1994 Findings of Fact and Conclusions of Law are modified as follows:
The ATCMHMR regular board meetings shall be scheduled to begin at a time chosen by the board between 9:30 a.m. and 6:00 p.m.
Several motions remain pending on the Court's docket in this cause. Therefore, the Court makes the following disposition of those motions:
IT IS ORDERED that the defendant's motion for summary judgment is DENIED;
IT IS ORDERED that the plaintiff's motion for leave to exceed the ten-page limit is GRANTED;
IT IS ORDERED that the plaintiff's motion for award of attorney's fees will remain under advisement pending the parties efforts to negotiate a settlement of attorney's fees. As stated in open Court, the Court will award attorney's fees to the plaintiff for the period of time through the trial of this cause should the parties be unable to reach an agreement.
NOTES
[1] The vote was eight to one. The only board member to vote against the 8:00 a.m. time was Guadalupe Perez. Perez was one of the three members of the planning and operations committee that voted unanimously in its August 20 meeting to recommend a noon meeting time to the board. Evidently, the other two members of the planning and operations committee changed their mind at the regular board meeting. This underscores Dees's concern about the importance of public access to the regular board meetings, not just the committee meetings.
[2] From the testimony at trial, it appears that the planning and operations committee was the only one of the four committees that met before noon.
[3] Dees testified that four of the nine members were present at the "town-hall" meeting she attended. Tweedy testified that although no board members are required to attend the "town-hall" meetings, the board members have an agreement among themselves that as many members as possible will attend the meetings.
[4] Unless the ADA explicitly states otherwise, the standards required under Title V of the Rehabilitation Act of 1973 apply for purposes of the ADA "[b]ecause title II of the ADA essentially extends the antidiscrimination prohibition embodied in section 504 to all actions of State or local governments." 28 C.F.R. pt. 35, app. A, at 442 (1993); see also 28 C.F.R. § 35.103.
[5] Under Title II of the ADA, a "disability" refers to a physical or mental impairment that substantially limits on or more of the major life activities of an individual. 28 C.F.R. § 35.104; pt. 35, app. A, at 444.
[6] ATCMHMR suggested, through the testimony of Dr. Bryan Reynolds, a psychiatrist on the staff of ATCMHMR, that sedative side effects, such as those experienced by Dees, are extremely rare and are a limited problem that can be controlled. However, the Court finds it implausible to think a person experiencing such a side effect would not be rid of it if possible. Further, Reynolds was unfamiliar with the particulars of Dees's mental illness and medication history. Dees's treating psychiatrist, Dr. Jefferson Nelson, who was the medical director for ATCMHMR from 1984 through 1987, testified chronically mentally ill people often feel drowsy and sleepy in the morning from the effects of the dose of medication needed to successfully control their illness. Kay Lambert, an ATCMHMR board member from 1975 through 1978, testified that many mentally persons, as well as many physically disabled people, were unable to attend early morning meetings because of their disabilities. Judy Benton, the coordinator of ATCMHMR's drop-in center, testified she has bipolar disorder and has difficulty functioning in the morning because of her medication. Efforts to adjust her medication to control the side effect have been unsuccessful because she must take a certain level of medication to control her symptoms. Benton also testified the drop-in center, which is consumer-operated, does not open until 10:00 a.m. because the members, many who suffer the sedative side effect, selected the hours.
[7] The regulations specify that Title II requires a public entity to make its programs accessible in all cases, except where to do so would result in fundamental alteration in the nature of the program or in undue financial or administrative burdens. The regulations further specify that the program access requirement of Title II should enable individuals with disabilities to participate in the programs and activities of public entities in all but the most unusual circumstance. 28 C.F.R. pt. 35, app. A, at 459. Although these specific comments are addressed primarily toward the physical accessibility of programs, the standard appears to be applicable in general to Title II.
[8] The Court notes that there may be potential costs to ATCMHMR associated with a time change, as the exhibits indicate that staff members are often in attendance at the board meetings. However, the cost in salaries and the administrative burden of scheduling for the absence of staff persons during part of the day was not established by the evidence.
[9] Dr. Reynolds testified some ATCMHMR consumers, particularly those experiencing anxiety disorder, may feel better in the morning and experience stronger symptoms of their illness in the afternoon. Dr. Nelson, Dees's psychiatrist, confirmed that some people may suffer more symptoms in the afternoon, but testified further that those people are less likely to be ATCMHMR consumers because their illness is less severe.
[1] No final judgment has been entered in this cause. The Court, therefore, assumes the defendant is seeking amendment of the Court's Findings of Fact and Conclusions of Law.
[2] The Court notes that an analogous provision in Title I of the ADA, which applies to employment, prohibits not making reasonable accommodations for a handicapped employee unless the entity can demonstrate that the accommodation would impose an undue hardship on the entity. ADA § 12112(b)(5)(A). "Reasonable accommodation" is defined as including job restructuring, modified work schedules, and other similar accommodations. § 12111(9)(B).
[3] The defendant appears to equate participation with verbal input. However, as the Court discussed at length in its findings, participation in the board meetings and the benefit from that participation is a broader concept than verbal input.
[4] However, were the Court to apply the fundamental alteration test, the Court believes it highly likely a competent lawyer could prove by a preponderance of the evidence that such a modification would cause fundamental alterations.
[5] During the hearing on the motion, the defendant attempted to draw an analogy to requiring ATCMHMR to install an elevator or escalator to assist physically handicapped individuals in ascending a sharp incline. The Court directs the defendant's counsel to Title III of the ADA, which specifically addresses physical accommodations under a readily achievable standard defined by the statute.
[6] By definition, some flexibility should be allowed in scheduling emergency meetings, and the evidence at trial reflected committee meetings are currently held in the 9:30 a.m. to 6:00 p.m. time frame. Further, any meeting closed to the public would not logically be covered by the order. However, as the Court stated in its order, it is disappointing to see litigation of this type. The Court can only hope all interested parties will work together in good faith and not create further litigation over these issues.